ROBERT WELCH, Appellant, v. WILLIAM H. BROWNING and MARY E. BROWNING, Appellees.

Action for Land Shortage: DAMAGES. Where defendant purchased 60 acres of land at $125 per acre from plaintiff and in an action to recover possession of a part of the land described in the deed the defendant counterclaimed for a shortage in acreage, an instruction, on finding for defendant, to allow him the value of the shortage at the rate per acre that the whole 60 acres would be worth had there been no shortage, is not prejudicial to plaintiff, defendant being entitled to recover at the contract price.

Waters: WHAT IS "HIGH WATER MARK." Ordinary high water mark of a river is a line which is shown by the character and condition of the soil and vegetation to be the limit to which high water ordinarily reaches, such vegetation not including those trees which grow and flourish best in the immediate vicinity of running streams and which can withstand the effect of water encompassing the lower part of their trunks without injury and for a longer period than other kinds of trees.

MEANDER LINES: Boundaries. In an action to recover possession of a tract of land abutting on a river, which defendant alleged was contained in a deed describing the land by metes and

bounds, it was not error to instruct that the meander line was not one of boundary, but was made for the determination of the quantity of land in the tract, and that such lines are not always conclusive of the quantities of the land in the tract, since changes occur in the interval following the establishment of the line, whereby the area may be increased by alluvial accretions or diminished by washouts.

**New Trial:** *Newly discovered evidence.* Where newly discovered evidence was irrelevant to the issues a motion for a new trial for such discovery was properly overruled.

**Appeal:** REVIEW OF CONFLICT IN TESTIMONY. Where the evidence was conflicting and supported the verdict, it will not be disturbed on appeal.

*Appeal from Muscatine District Court.*—HON. W. F. BRANNAN, Judge.

SATURDAY, OCTOBER 5, 1901.

ACTION of right to recover possession of real estate. Defendants denied plaintiff's title, and also pleaded a counterclaim for deficiency in a tract of land purchased of plaintiff. Trial to a jury. Verdict and judgment for defendants, and plaintiff appeals.—*Affirmed.*

*Jayne & Hoffman* for appellant.

*Carskaddan & Burk* for appellees.

DEEMER, J.—Plaintiff sold to defendants a tract of land abutting on the Mississippi river at the agreed price of $125 per acre. The description was by metes and bounds, and the south line was meandered. This is added to the description: "Said tract last described containing 64 15-100 acres, the intention being to convey the west 60 acres thereof." This action is to recover the east 184 feet of the tract. Defendants plead that they are the owners of the tract in virtue of the conveyance to them; that they purchased 60 acres of land at so much per acre; that, instead of there being 60 acres in the tract, there were

but 57.95 acres, and they ask judgment for the deficiency.
As the land lies along the Mississippi river, the sole question
in the case is, where is the southern boundary of the tract
sold to the defendants? Defendants contend that the bound-
aries as given in the deed included about six acres of land
lying in the bed of the river between high and low water
mark. The case turns almost entirely on this one point,
where, in the tract conveyed, was high-water mark? The jury
found in accord with defendants' contention, and returned a
verdict for them on their counterclaim. The case was tried
as at law, and comes to us on assignments of error, and to
such of them as are argued we will now turn our attention.
The Chicago, Rock Island & Pacific Railroad track runs
through the tract, and near, if not at, high-water mark on
the south side. The jury found in answer to a special inter-
rogatory that but 1¼ acres of land south of the railway right
of way were above high-water mark. This is made the
ground of special complaint, for, according to the surveys
made by plaintiff's witnesses, there are from 7 to 9
acres in this tract. There is a decided conflict in the
evidence regarding high-water mark, and the verdict
has such support that we should not interfere for lack of
evidence. The principal instructions relating to high-water
mark read as follows: "(6). The question as to
what in law constitutes ordinary high-water mark is
the leading question in this case. It therefore be-
comes necessary to define what the law regards as ordinary
high-water mark. It does not mean the height reached by
unusual floods, for these usually soon disappear. Neither
does it mean the line ordinarily reached by the great annual
rises of the river, which cover in places lands that are valu-
able for agricultural purposes, since the waters brought by
these annual rises do not usually remain permanently, or
or for any great length of time, and crops may be raised on
the soil as the water subsides. Nor yet does it mean meadow
land adjacent to the river, which, when the water leaves it, is
adapted to and can be used for grazing or pasturing purposes

(7) The line, then, which fixes the high-water mark is that which separates what properly belongs to the river bed from that which belongs to the riparian owner—that is, the owner of adjoining land,—and is not the line reached by unusual floods, but that which is shown by the character and condition of the soil and vegetation to be the limit to which high water ordinarily reaches. Soil which is submerged so long or so frequently, in ordinary seasons, that vegetation will not grow upon it, may be regarded as part of the bed of the river which overflows it, and consequently soil to the use of which the public have the same right that they have to waters of the river." "(12) Trees may be included under the general head of vegetation, but trees which grow and flourish best in the immediate vicinity of running streams that are subject to overflow, and which shoot up in places as the water recedes, and which can withstand the effect of water encompassing the lower part of their trunks without injury, and for a longer period than other kinds of trees, should not necessarily be classed as the kind of vegetation to which the law refers as marking the limit of ordinary high water in cases of the character such as the one on trial, unless the soil on which they grow is adapted to and can be used for agricultural purposes, or so far removed from the effect of ordinary high water as to become permanent. You are to say from the evidence before you whether or not the trees mentioned and located in the testimony as growing upon the particular portion of the land, the character of which is, in this action, the subject of dispute, are or are not growing on soil upon which crops may be raised or grass grown suitable for meadow or pasturage, or are so unaffected by high water as to become permanent. It is for you to say, under the evidence before you, whether the soil upon which these trees grow, and their location in respect to the river, can be used for agricultural purposes, such as the cultivation of crops or as meadow or not. So much of it as you may find susceptible of cultivation and the growing of crops would be above ordinary high-water mark, and not part of the river

bed, as would also be groups of trees which have stood for many years unaffected by high water, and are permanently fixed in the ground." These are complained of, and it is insisted that the court erred in not giving those asked by plaintiff relating to the same subject. While the twelfth is somewhat involved, yet we think its meaning is clear, and that the jury could not have been misled thereby. The same thought applies to the sixth. Each seems to have support in the authorities. *Bennett v. Manufacturing Co.*, 103 Iowa, 211 and cases cited; *Houghton v. Railroad Co.*, 47 Iowa, 374. The eighth is as follows: "(8) Something was said in the testimony about the meander line of the tract in question. The meander line is not a line of boundary, and should not be so considered by you, but is made for the purpose of ascertaining the quantity of land in the tract. But such meander lines are not always conclusive of the quantities of land in the tract. In the long interval of time following the establishment of the meander line changes may occur by which the area of the tract may be either increased or diminished. It may be increased by earthy deposits made to the tract, which become incorporated with the soil of the tract. Such earthy deposits are usually called 'alluvial accretions,' and become the property of the riparian proprietor. On the other hand, the soil of the riparian owner may be diminished by washouts, as they are called, caused by the current of high waters. In addition to this, there may be error in the statement of the quantity of land at the time the meander line was originally drawn." This is also complained of. It is correct, as far as it goes, and contains nothing prejudicial to plaintiff. A request from plaintiff no doubt prompted the court to give it, and, although not in the same language as the request, it embodies the same thought. The court further instructed that, if the jury found defendants entitled to recover, it should deduct the value of the improvements, and allow them the value of the shortage at the rate per acre that the whole 60 acres would be worth had there

been no shortage. If there was any error in this instruction, it was prejudicial to defendants. The parties fixed the value per acre in their contract, and, if there was a shortage, defendants were entitled to recover therefor at the contract price. *Russell v. Keeran,* 8 Leigh, 14. The answers to the special interrogatories are not without support as claimed, and, even if some of the instructions complained of be faulty they were without prejudice because of these special findings. Some of the rulings on evidence are complained of. What we have said answers most of the complaints. The others are not of sufficient importance to demand separate consideration. One ground of the motion for a new trial was newly-discovered evidence. Plaintiff did not show such diligence in obtaining this evidence as he should. Moreover, some of the evidence was entirely irrelevant to the issues. We have gone over the record with care, and discover no prejudicial error.—AFFIRMED.