[No. 23650. Department One. October 11, 1932.]

GRAYS HARBOR NATIONAL BANK OF ABERDEEN, *as Trustee, Appellant,* v. LOIE JACOBS, *Respondent and Cross-appellant,* JOHN DOE HART *et al., Defendants.*[1]

*L. B. Donley,* for appellant.

*W. A. Ackerman,* for respondent and cross-appellant.

HERMAN, J.—Plaintiff brought this action to compel the payment of so much of the proceeds of an insurance policy as was due to the mortgagee of property which had been sold under an executory contract,

[1]Reported in 14 P. (2d) 963.

and the payment of the balance due under the terms of the policy to itself, the vendor.

Prior to August 1, 1930, plaintiff was the owner of the real property, and by executory contract of that date, the property was sold to defendant Loie Jacobs. The contract provided for an initial payment of eight hundred dollars and an agreement to pay the balance of $6,422 at the rate of seventy-five dollars, or more, on the 20th day of each succeeding month. The contract also contained provisions that time was of the essence thereof, and for default in event of failure to pay. There was, however, no provision for the retention of payments already made as liquidated damages for non-performance, in the event of a breach of the contract.

When the executory contract to sell was made, there was a dwelling house on the real property, which was insured by The North River Insurance Company in the sum of four thousand dollars. The policy of insurance was originally issued to defendant E. F. Kuper, whose interest was, by an appropriate rider, transferred to plaintiff. There was attached to the policy a rider covering the interest of the mortgagee, defendant The Aberdeen Savings and Loan Association, and when the contract of sale between plaintiff and Loie Jacobs was made, another rider was attached to the policy which provided for the payment of the insurance to defendant Loie Jacobs and the plaintiff as follows:

"First: To said vendor (plaintiff), to an amount not exceeding the balance unpaid, at the time of loss, upon the contract of sale above referred to; and

"Second: The balance, if any, to said vendee (defendant Loie Jacobs)."

March 6, 1931, the dwelling house on the real property was wholly destroyed by fire. At that time, there

was unpaid on the contract of sale a sum in excess of six thousand dollars, which was in excess of the face of the insurance policy, and at the time the loss occurred, defendant Loie Jacobs was in default on the contract.

Plaintiff brought this action to compel the defendant North River Insurance Company to pay over the insurance of four thousand dollars, first, to defendant The Aberdeen Savings and Loan Association the amount of its mortgage, and second, the balance to plaintiff, in accordance with the terms of the policy and the rider attached thereto at the time of the contract of sale. The insurance company paid the four thousand dollars into court. Defendant The Aberdeen Savings and Loan Association appeared, praying that it be paid the amount of its mortgage, and by stipulation, that item was paid, the amount being $2,921.61. Defendant Loie Jacobs answered, seeking reformation of the contract of sale so as to eliminate therefrom the provision which required payments to be made "regardless of any damage to the property," and seeking also to reform the rider attached at the time of the contract of sale, to make it provide for payment to her of any balance over and above the mortgage.

The trial resulted in judgment for defendant Loie Jacobs, providing that, from the four thousand dollars insurance fund deposited in court by the insurance company, she should recover one thousand dollars, and that plaintiff should have the remainder after the payment of the mortgage, or the sum of $78.39. From that judgment, plaintiff has appealed, and defendant Loie Jacobs has cross-appealed.

 Respondent maintains that the contract did not pass any equitable or beneficial interest to the vendee; that, therefore, the respondent was, in fact, en-

titled to $1,160; and that the court should have ordered payment to respondent of the entire fund remaining after the payment of the mortgage. This contention is based on the fact that, at the time of the execution of the contract, respondent made an initial payment of eight hundred dollars, and thereafter made three subsequent payments of $120 each, the last of such payments being made October 24, 1930. Respondent maintains that the contract had not been forfeited when the house· burned, and calls the court's attention to the case of *Ashford v. Reese,* 132 Wash. 649, 233 Pac. 29.

Examination of the record discloses a failure upon the part of respondent to show reason for the reformation of either the contract of sale or the rider attached to the insurance policy at the time the contract of sale was entered into between appellant and respondent.

In the case at bar, the contract clearly shows that the vendor availed itself of the suggestion put forth by Judge Askren in his concurring opinion in the case of *Ashford ·v. Reese, supra,* wherein he said, "Knowing the rule, parties can by contract protect themselves as to the loss." The contract between appellant and respondent requires payments to be made by respondent "regardless of any damage to the property."

Respondent has failed to show why she should not be required to comply with the terms of her contract. She alleges that, at the time of the fire, she was not in default. With that contention, we cannot agree, as she had not complied with the terms of the contract, which required payments to be made at the rate of seventy-five dollars per month or more on the 20th day of each month following August. 1, 1930. March 6, 1931, when the house burned, she was in default in her payments, and she has remained in default at all times since.

May 5, 1931, appellant caused a notice to be served upon respondent, the material part of which is as follows:

"Now therefore notice is hereby given to the said Loie Jacobs that if the payments provided for in said contract be not made in accordance with the terms thereof and all back payments made so as to reinstate the said contract, then and in that event the said Grays Harbor National Bank, trustee for the Suburban Development Association, a syndicate, will, on June 5, 1931, declare said contract to be null and void and of no force and effect, and will retain all payments heretofore made pursuant thereto as damages liquidated for the non-performance of said contract."

No further steps were taken relative to the proposed forfeiture. June 16, 1931, the present action was instituted by filing of summons and complaint. Respondent's counsel maintains that appellant

". . . has made it impossible for the respondent to perform the contract by serving notice on her cancelling the contract, and by telling her that she has no right to the proceeds of the insurance in any manner, thereby entitling her to rescind the contract and recover the amount paid thereon, or thereby entitling her to all of the insurance moneys."

With that contention of respondent's counsel, we cannot agree. In the case of *Reddish v. Smith,* 10 Wash. 178, 38 Pac. 1003, 45 Am. St. 781, it was held that, if a contract for the sale of land provides for payment of the purchase price in installments, the vendor is not required to make a tender of a conveyance before declaring a forfeiture for non-payment of the installments due. In that case, the court also held that a provision in the contract for the sale of land, giving the vendor power to declare the contract forfeited upon failure of the purchaser to promptly pay

installments of the purchase price therein provided for, carries with it, not only the forfeiture of the contract, but also the forfeiture of all payments made under the terms of the contract. In the course of its opinion in *Reddish v. Smith, supra,* the court said:

"It would certainly place the vendor in a very embarrassing position if he were to be called upon at any time during the life of the contract to refund payments which had been made to him under the contract of sale. He would never know whether his land was sold or not, and would always have to hold himself in readiness to refund the money until the life of the contract had ceased. We do not think that such is a reasonable construction of this contract, and it is not supported by authority. The rule is thus laid down in 2 Warvelle on Vendors, pp. 835, 836:

" 'A neglect or refusal of either party to perform on his part will, as a rule, place him in the power of the other party, where he is not also derelict, to avoid the contract or not at his pleasure. Hence, a failure to meet payments at the time or times reserved may be treated by the vendor as an abandonment, and he may rescind the contract and sell the land to another. And in such case the vendee will not be entitled to recover back the money he may have advanced in part performance,' citing *Green v. Green,* 9 Cow. 46."

There is nothing in the record which indicates that the appellant was, at any time prior to the institution of this suit, derelict under the terms of the contract. It is true that the condition of the real property had changed materially, but it is likewise true that the contract between respondent and appellant required respondent to pay, regardless of any damage to the property. The trial court erred in ordering the payment of any sum to respondent.

Reversed on appellant's appeal, with instructions to the trial court to enter judgment for appellant for such sum as remains from the four thousand dollar

insurance fund deposited in court after payment of the mortgage of The Aberdeen Savings and Loan Association. The judgment is affirmed on respondent's cross-appeal.

MAIN, BEALS, MITCHELL, and MILLARD, JJ., concur.