FILED
COURT OF APPEALS
DIVISION II
2014 MAY 13 AM 9: 13
STATE OF WASHINGTON
BY_____
DEPUTY

No. 43825-9-II

GERALD G. RICHERT, on behalf of
SKOKOMISH FARMS INC., a Washington
corporation; GERALD F. RICHERT and
SHIRLEY RICHERT, husband and wife, and
the marital community thereof; THE ESTATE
OF JOSEPH W. BOURGAULT; NORMA
BOURGAULT, a single woman; ARVID
HALDANE JOHNSON, on behalf of
OLYMPIC EVERGREEN, LLC, a
Washington limited liability company; ARVID
HALDANE JOHNSON and PATRICIA
JOHNSON, husband and wife, and the marital
community thereof; SHAWN JOHNSON and
SHELLOY JOHNSON, husband and wife, and
the marital community thereof; JAMES M.
HUNTER, on behalf of the HUNTER
FAMILY FARMS LIMITED
PARTNERSHIP, a Washington partnership;
JAMES M. HUNTER and JOAN HUNTER,
husband and wife, and the marital community
thereof; JAMES C. HUNTER and SANDRA
HUNTER, husband and wife, and the marital
community thereof; GREGORY HUNTER and
TAMARA HUNTER, husband and wife, and
the marital community thereof; DAVID
KAMIN and JAYNI KAMIN, husband and
wife, and the marital community thereof;
WILLIAM O. HUNTER, on behalf of
HUNTER BROTHERS STORE, a
Washington partnership; PAUL B. HUNTER,
on behalf of HUNTER BROTHERS, LLC, a
Washington limited liability company;
WILLIAM O. HUNTER and CAROL
HUNTER, husband and wife, and the marital
community thereof; PAUL B. HUNTER
and LESLIE HUNTER, husband and wife,
and the marital community thereof;
WILLIAM O. HUNTER, JR. and LUAYNE
HUNTER, husband and wife, and the
marital community thereof; DOUGLAS
RICHERT, a single man; EVAN TOZIER, on
behalf of RIVERSIDE FARM, a Washington

No. 43825-9-II

partnership; ARTHUR TOZIER, a single man;
MAXINE TOZIER, in her individual capacity;
and EVAN TOZIER, a single man,

                Respondents,

    v.

TACOMA POWER UTILITY, a Washington
Utility, and the CITY OF TACOMA, a
Washington municipality,

                Appellants.

ORDER GRANTING
MOTION FOR RECONSIDERATION

**APPELLANT**, City of Tacoma, has moved for reconsideration of the published opinion filed in this case. After due consideration, the court grants the motion and amends the March 4, 2014 opinion with the attached Order Amending Opinion.

**IT IS SO ORDERED.**

Dated this __13TH__ day of ___MAY___, 2014.

**PANEL:** Jj. Worswick, Hunt, Penoyar

**FOR THE COURT:**

CHIEF JUDGE

2

FILED
COURT OF APPEALS
DIVISION II

2014 MAY 13 AM 9: 13

STATE OF WASHINGTON
BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

GERALD G. RICHERT, on behalf of
SKOKOMISH FARMS INC., a Washington
corporation; GERALD F. RICHERT and
SHIRLEY RICHERT, husband and wife, and
the marital community thereof; THE ESTATE
OF JOSEPH W. BOURGAULT; NORMA
BOURGAULT, a single woman; ARVID
HALDANE JOHNSON, on behalf of
OLYMPIC EVERGREEN, LLC, a
Washington limited liability company; ARVID
HALDANE JOHNSON and PATRICIA
JOHNSON, husband and wife, and the marital
community thereof; SHAWN JOHNSON and
SHELLOY JOHNSON, husband and wife, and
the marital community thereof; JAMES M.
HUNTER, on behalf of the HUNTER
FAMILY FARMS LIMITED
PARTNERSHIP, a Washington partnership;
JAMES M. HUNTER and JOAN HUNTER,
husband and wife, and the marital community
thereof; JAMES C. HUNTER and SANDRA
HUNTER, husband and wife, and the marital
community thereof; GREGORY HUNTER and
TAMARA HUNTER, husband and wife, and
the marital community thereof; DAVID
KAMIN and JAYNI KAMIN, husband and
wife, and the marital community thereof;
WILLIAM O. HUNTER, on behalf of
HUNTER BROTHERS STORE, a
Washington partnership; PAUL B. HUNTER,
on behalf of HUNTER BROTHERS, LLC, a
Washington limited liability company;
WILLIAM O. HUNTER and CAROL
HUNTER, husband and wife, and the marital
community thereof; PAUL B. HUNTER
and LESLIE HUNTER, husband and wife,
and the marital community thereof;

No. 43825-9-II

No. 43825-9-II

WILLIAM O. HUNTER, JR. and LUAYNE
HUNTER, husband and wife, and the
marital community thereof; DOUGLAS
RICHERT, a single man; EVAN TOZIER, on
behalf of RIVERSIDE FARM, a Washington
partnership; ARTHUR TOZIER, a single man;
MAXINE TOZIER, in her individual capacity;
and EVAN TOZIER, a single man,

Respondents,

v.

TACOMA POWER UTILITY, a Washington
Utility, and the CITY OF TACOMA, a
Washington municipality,                                    ORDER AMENDING OPINION

Appellants.

It is hereby ORDERED that this court's opinion filed on March 4, 2014 is

amended as follows:

On page 2, paragraph 1, the following text shall be deleted:

    In this class action lawsuit for property damage caused by
increased water flow, the City of Tacoma makes an interlocutory appeal of
the superior court's two rulings on cross summary judgment motions. The
first ruling granted a motion for partial summary judgment that served to
strike one of Tacoma's affirmative defenses against the claims of Gerald
Richert and the members of his class involved in this appeal (the
Richerts).

The following language shall be inserted in its place:

    In this lawsuit for property damage caused by increased water
flow, the City of Tacoma makes an interlocutory appeal of the superior
court's two rulings on cross summary judgment motions. The first ruling
granted a motion for partial summary judgment that served to strike one of
Tacoma's affirmative defenses against the claims of Gerald Richert and
the other plaintiffs involved in this appeal (the Richerts).

No. 43825-9-II

And on page 3, immediately following the "S" in the heading "FACTS," the following

text shall be added in a footnote:

> Because both of the superior court orders on review concerned whether the Richerts' claims were precluded as a matter of law, we write the facts in the light most favorable to the Richerts. *See Witt v. Young*, 168 Wn. App. 211, 213, 275 P.3d 1218, *review denied*, 175 Wn.2d 1026, 291 P.3d 254 (2012).

And on page 7, paragraph 1, the following text shall be deleted:

> Gerald Richert and the members of his class involved in this appeal are owners of 88 of the Type Two parcels, whose riparian and water rights, but not land rights, were condemned by Tacoma in *Funk*.

The following language shall be inserted in its place:

> Gerald Richert and the other plaintiffs in this appeal are owners of 88 of the Type Two parcels, whose riparian and water rights, but not land rights, were condemned by Tacoma in *Funk*.

The footnote that follows the sentence ending in "condemned by Tacoma in *Funk*" shall remain.

DATED this 13TH day of MAY, 2014.

_____
Worswick, C.J.

I concur:

_____
Hunt, J.

_____
Penoyar, J.

FILED
COURT OF APPEALS
DIVISION II

2014 MAR -4 AM 9: 17

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

GERALD G. RICHERT, on behalf of
SKOKOMISH FARMS INC., a Washington
corporation; GERALD F. RICHERT and
SHIRLEY RICHERT, husband and wife, and
the marital community thereof; THE ESTATE
OF JOSEPH W. BOURGAULT; NORMA
BOURGAULT, a single woman; ARVID
HALDANE JOHNSON, on behalf of
OLYMPIC EVERGREEN, LLC, a
Washington limited liability company; ARVID
HALDANE JOHNSON and PATRICIA
JOHNSON, husband and wife, and the marital
community thereof; SHAWN JOHNSON and
SHELLOY JOHNSON, husband and wife, and
the marital community thereof; JAMES M.
HUNTER, on behalf of the HUNTER
FAMILY FARMS LIMITED
PARTNERSHIP, a Washington partnership;
JAMES M. HUNTER and JOAN HUNTER,
husband and wife, and the marital community
thereof; JAMES C. HUNTER and SANDRA
HUNTER, husband and wife, and the marital
community thereof; GREGORY HUNTER and
TAMARA HUNTER, husband and wife, and
the marital community thereof; DAVID
KAMIN and JAYNI KAMIN, husband and
wife, and the marital community thereof;
WILLIAM O. HUNTER, on behalf of
HUNTER BROTHERS STORE, a
Washington partnership; PAUL B. HUNTER,
on behalf of HUNTER BROTHERS, LLC, a
Washington limited liability company;

No. 43825-9-II

No. 43825-9-II

WILLIAM O. HUNTER and CAROL
HUNTER, husband and wife, and the marital
community thereof; PAUL B. HUNTER
and LESLIE HUNTER, husband and wife,
and the marital community thereof;
WILLIAM O. HUNTER, JR. and LUAYNE
HUNTER, husband and wife, and the
marital community thereof; DOUGLAS
RICHERT, a single man; EVAN TOZIER, on
behalf of RIVERSIDE FARM, a Washington
partnership; ARTHUR TOZIER,  a single man;
MAXINE TOZIER, in her individual capacity;
and EVAN TOZIER, a single man,

                        Respondents,

    v.

TACOMA POWER UTILITY, a Washington
Utility, and the CITY OF TACOMA, a
Washington municipality,

                        Appellants.

PUBLISHED OPINION

    WORSWICK, C.J. — In this class action lawsuit for property damage caused by increased

water flow, the City of Tacoma makes an interlocutory appeal of the superior court's two rulings

on cross summary judgment motions. The first ruling granted a motion for partial summary

judgment that served to strike one of Tacoma's affirmative defenses against the claims of Gerald

Richert and the members of his class involved in this appeal (the Richerts). The second ruling

denied Tacoma's motion for summary judgment for dismissal of the Richerts' claims. The

superior court's two rulings summarily determined one limited legal issue in favor of the

Richerts: *City of Tacoma v. Funk*, No. 1651 (Mason County Super. Ct., Sept. 11, 1920)—a 1920

condemnation action in which Tacoma condemned the Richerts' riparian and water rights so as

2

to allow Tacoma to build two dams on the Skokomish River—did not preclude the Richerts' claims for flood and groundwater damage as a matter of law. In this interlocutory appeal, Tacoma argues that *Funk* precludes the Richerts' claims as res judicata. We affirm the superior court, because Tacoma has failed to meet its burden of proving that the Richerts' claims have a concurrence of identity with *Funk*'s final judgment.

FACTS

A. *Background*

The Skokomish River's main stem is fed by three tributaries: the North Fork, the South Fork, and Vance Creek. Water flows through the main stem and into the Hood Canal.

Tacoma has operated two dams on the North Fork of the Skokomish River since 1926. These dams today operate under Federal Energy Regulatory Commission (FERC) licenses. Tacoma's dams prevent most of the North Fork's water from flowing to the main stem. Prior to the existence of Tacoma's dams, the North Fork contributed 800 cubic feet per second (cfs) of water to the main stem, which was one third of the main stem's water.

B. *Funk Condemnation*

In 1923, Tacoma condemned the property rights that the dams' construction and operation would damage in *Funk*. The *Funk* condemnation action condemned the property rights of over 80 parcels of real property. In *Funk*, Tacoma condemned the property rights of two different parcel types, depending on how much damage the dams would cause the parcels.

3

First, Tacoma condemned in their entirety those parcels on the North Fork that the dams' construction and operation would either occupy or overflow with water (Type One parcels). The Type One parcels constituted a combined total of 730 acres.

Second, Tacoma condemned the riparian and water rights, but not the land rights, of those parcels located below the dam, primarily on the main stem (Type Two parcels). Tacoma condemned only the riparian and water rights of the Type Two parcels because the dams' construction and operation took water away from these parcels but did not occupy or overflow them. In its condemnation petition, Tacoma stated the following as to its reason for condemning the Type Two parcels' water rights:

> That with the construction of [the dams] . . . a portion of the waters of [the North Fork] will be diverted from the present channel thereof and used by [Tacoma] . . . *and the volume of water in said river below said dam will be diminished and by reason thereof* it is and will be necessary and convenient for said City of Tacoma to take and acquire . . . the water rights, riparian rights, easements, privileges and other facilities upon said river below said dam, necessary and adequate for the proper development, construction, operation and maintenance of said power plant.

Clerk's Papers (CP) at 1382 (emphasis added).

In *Funk*, Tacoma paid compensation for the entire Type One parcels and the riparian and water rights of the Type Two parcels. The *Funk* court determined these compensation awards individually for each owner. Many parcel owners received their individualized compensation awards by jury verdict, while other parcel owners received their compensation awards under stipulation agreements.

The Type One parcel owners received a combined total of $90,200, in approximately 7 individual compensation awards, for their 730 acres of parcels, averaging $123.56 per acre. The

4

Type Two parcel owners received a combined total of $50,670.30, in approximately 40

individual compensation awards, for their riparian and water rights (which were attached to

6,360.6 acres), averaging $7.95 per acre. After Tacoma paid these compensation awards, the

*Funk* superior court entered two separate decrees condemning the land rights of the parcels.

The decree condemning the land rights of the Type One parcels for Tacoma's use stated:

> [I]t is hereby ORDERED AND DECREED that there is hereby appropriated and
> granted to and vested in fee simple in [Tacoma] . . . for the construction, operation
> and maintenance of an hydro-electric power plant on and along the North Fork of
> the Skokomish River and on and along Lake Cushman in Mason County,
> Washington, as set forth in the petition herein on file, the lands, real estate,
> premises, water rights, easements, privileges and property, including the right to
> divert the North Fork of the Skokomish River located in Mason County,
> Washington, hereinafter described, of the [Type One parcels].

CP at 3660.

On the same day, the *Funk* superior court entered a decree condemning the riparian and

water rights of the Type Two parcels stating:

> [I]t is hereby ORDERED AND DECREED that there is hereby appropriated and
> granted to and vested in fee simple in [Tacoma] . . . for the construction, operation
> and maintenance of an hydro electric power plant on and along the North Fork of
> the Skokomish river and on and along Lake Cushman in Mason County,
> Washington, as set forth in the petition herein on file, the waters, water rights,
> riparian rights, easements and privileges, including the right to divert the waters
> of the North Fork of the Skokomish River located in Mason County, Washington,
> appertaining and appurtenant to the [Type Two parcels].
>
> . . . .
>
> [I]t is further ORDERED AND DECREED that [Tacoma] . . . is hereby granted
> the right, at any time hereafter, to take possession of, appropriate and use all of
> the waters, water rights, riparian rights, easements and privileges appertaining and
> appurtenant to the lands, real estate and premises hereinabove described, together
> with the right to divert the waters of the North Fork of the Skokomish River, and
> the same is hereby appropriated and granted unto, and the title shall vest in fee

5

simple in [Tacoma] as of the 11th day of September, 1920, and its successors forever; the same being for a public use.[1]

CP at 3650, 3656.

C.     *Tacoma's Increase in Water Flow*

From 1926 until 1988, Tacoma's dams diverted most of the North Fork's water flow out of the river, resulting in an average of only 10 cfs released from the North Fork and into the main stem.

In 1988, FERC required Tacoma to increase the flows to 30 cfs as part of its water quality certification for the project. In 1998 FERC began requiring Tacoma to release even more water through the dams, for the purpose of preserving fish and the environment. Litigation with FERC regarding minimum water flow required Tacoma to increase the flow to 60 cfs in 1999 and to 240 cfs in 2008. In 2010, an amendment to Tacoma's 1998 FERC license created a schedule for releasing different amounts of water at different times throughout the year. However, the 2010 amendments to the license required Tacoma to maintain an average flow that was significantly higher than the 10 cfs released by the dams through most of their history.

Since 1988, Tacoma increased water flow to and through the main stem, increasing the amount of water that flowed alongside the Richerts' parcels. This increase of water is the subject of the Richerts' lawsuit against Tacoma.

---

[1] Tacoma limits its appeal to the riparian and water rights granted by *Funk*, and explicitly states that it makes no claims on appeal related to the easements that Tacoma condemned in *Funk*.

D.     *The Richerts' Lawsuit*

Gerald Richert and the members of his class involved in this appeal are owners of 88 of the Type Two parcels, whose riparian and water rights, but not land rights, were condemned by Tacoma in *Funk*.[2]   The Richerts' parcels are located below the dams and primarily on the main stem.

The Richerts sued Tacoma, alleging that the increased amount of water that Tacoma's dams released overflowed the main stem, causing the water to invade and damage the Richerts' parcels.

The dams' diversion of water away from the main stem, from 1926 until 2008, prevented the water from naturally washing accumulating gravel out of the main stem.  The Richerts claimed that over the decades this failure to wash out the gravel caused aggradation:  the slow building up of gravel in a river bed that greatly reduces the amount of water that a river can contain.

The Richerts alleged that by 2008, the main stem had suffered aggradation to the point that it could not contain Tacoma's sudden increase of water flow into the main stem, which caused the main stem to overflow.  The Richerts claim that the increased water flow overflowed the banks of the main stem and additionally has caused a continuing rise in the groundwater table.

---

[2] Twenty-two additional parcels are included in the superior court case, but are not included in the eighty-eight Type Two parcels relevant to this appeal, because the twenty-two parcels were not involved in *Funk*.

E.     *Procedural History*

The Richerts sued Tacoma for (1) violation of riparian rights, (2) failure to provide a proper outflow for channeled surface waters, (3) violation of RCW 4.24.630 (liability for damage to land and property), (4) trespass and continuing trespass, (5) nuisance and continuing nuisance, (6) negligence, (7) inverse condemnation by flooding, and (8) inverse condemnation by groundwater. Tacoma asserted as an affirmative defense that *Funk*'s decrees constitute a final judgment barring the Richerts' claims as res judicata.

The Richerts filed a motion for partial summary judgment, asking the superior court to dismiss Tacoma's affirmative defense related to *Funk*. Tacoma also filed a motion for summary judgment, asking the superior court to dismiss the Richerts' claims in their entirety.

The superior court granted the Richerts' motion for partial summary judgment, dismissing Tacoma's affirmative defense. The superior court determined that the Richerts' claims were "not within the contemplation of the *Funk* litigants or the *Funk* court." Verbatim Report of Proceedings (June 8, 2012) at 8. The superior court denied Tacoma's motion for summary judgment.

The superior court entered a very limited final judgment to facilitate our interlocutory review under CR 54(b), RAP 2.2(d), and RAP 2.3(b)(4). The superior court limited its final judgment to the issue of whether the *Funk* condemnation action precluded the Richerts' ability to pursue their claims. The superior court stated that its final judgment "does not apply to any of the other issues adjudicated on summary judgment." CP at 63. Tacoma appeals the superior

No. 43825-9-II

court's partial summary judgment, arguing that *Funk*'s final judgment precludes the Richerts' claims as res judicata.

ANALYSIS

Tacoma argues that res judicata bars the Richerts' claims because these claims share a concurrence of identity with *Funk*'s final judgment. We disagree.

We review summary judgments de novo. *Michak v. Transnation Title Ins. Co.*, 148 Wn.2d 788, 794, 64 P.3d 22 (2003). Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). In this case, the parties agree that no genuine issue of material fact exists on the limited issue of the effect of the *Funk* judgment on the Richerts' ability to pursue their claims.

I. RIPARIAN RIGHTS

The ownership of a parcel adjacent to a watercourse gave that parcel owner riparian rights in the watercourse. *Dep't of Ecology v. Abbott*, 103 Wn.2d 686, 689, 694 P.2d 1071 (1985). Washington State abolished riparian rights in 1917, but maintained those riparian rights existing prior to 1917. *Abbott*, 103 Wn.2d at 692. These rights existing before 1917 can still be condemned under eminent domain. *See* Former RCW 90.03.040 (1917); *Lummi Indian Nation v. State*, 170 Wn.2d 247, 253, 241 P.3d 1220 (2010). The State abolished all preexisting but unused riparian rights in 1932. *Abbott*, 103 Wn.2d at 695-96.

Where riparian rights still exist, the riparian owner has the right "(1) to have the stream flow past his property in its natural condition . . . (generally speaking, the owner above cannot divert or pollute the stream and the owner below cannot raise the level of the water by dams or

9

other obstructions); (2) to such use of the water as it flows past his land as he can make without materially interfering with the common right of other riparian owners; (3) to whatever the water produces, such as ice." *DeRuwe v. Morrison*, 28 Wn.2d 797, 805, 184 P.2d 273 (1947). A riparian owner may not divert water in a natural watercourse without facing liability for damages caused to other riparian owners. *See Fitzpatrick v. Okanogan County*, 169 Wn.2d 598, 608, 238 P.3d 1129 (2010). Riparian owners have a right to not have their water levels raised or lowered. *DeRuwe*, 28 Wn.2d at 808.

Rights to water use can be condemned by eminent domain. Former RCW 90.03.040; *Lummi Indian Nation*, 170 Wn.2d at 253. However, where one has a right to use water, one still may not overflow the river and flood parcels without compensation. *See* RCW 90.03.030 (person with right to use river water may not increase water in river above ordinary high-water mark); *see also Thompson v. Dep't of Ecology*, 136 Wn. App. 580, 586, 150 P.3d 1144 (2007) (ordinary high-water mark "'represent[s] the point at which the water prevents the growth of terrestrial vegetation.'"[3]).

## II. Res Judicata

Whether res judicata bars a party from pursuing an action is a matter of law reviewed de novo. *Martin v. Wilbert*, 162 Wn. App. 90, 94, 253 P.3d 108 (2011). Res judicata's purpose is to prevent parties from relitigating claims. *Loveridge v. Fred Meyer, Inc.*, 125 Wn.2d 759, 763, 887 P.2d 898 (1995). Res judicata bars the relitigation of claims that were litigated to a final

---

[3] Quoting Frank E. Maloney, *The Ordinary High Water Mark: Attempts at Settling an Unsettled Boundary Line*, 13 LAND & WATER L. REV. 465, 470 (1978).

10

judgment or could have been litigated to a final judgment in a prior action. *Loveridge*, 125 Wn.2d at 763; *Hisle v. Todd Pac. Shipyards Corp.*, 151 Wn.2d 853, 865, 93 P.3d 108 (2004). However, when considering whether res judicata precludes a party from litigating a claim, we are careful to not "'deny the litigant his or her day in court.'" *Hisle*, 151 Wn.2d at 865 (quoting *Schoeman v. N.Y. Life Ins. Co.*, 106 Wn.2d 855, 860, 726 P.2d 1 (1986)). Res judicata applies not just to those claims that a prior case's final judgment actually resolved, but also to claims that were not resolved but that reasonably diligent parties should have raised in that prior litigation. *Hisle*, 151 Wn.2d at 865.

For res judicata to preclude a party from litigating a claim, a prior final judgment must have a concurrence of identity with that claim in (1) subject matter, (2) cause of action, (3) persons and parties, and (4) quality of the persons for or against whom the claim is made. *Spokane Research & Def. Fund v. City of Spokane*, 155 Wn.2d 89, 99, 117 P.3d 1117 (2005); *Loveridge*, 125 Wn.2d at 763. The party asserting res judicata, in this case Tacoma, bears the burden of proof. *Hisle*, 151 Wn.2d at 865.

Regarding the second element of this four-part res judicata test, to determine whether two causes of action are the same, we consider whether "(1) prosecution of the later action would impair the rights established in the earlier action, (2) the evidence in both actions is substantially the same, (3) infringement of the same right is alleged in both actions, and (4) the actions arise out of the same nucleus of facts." *Civil Service Comm'n v. City of Kelso*, 137 Wn.2d 166, 171, 969 P.2d 474 (1999).

### III. APPLICATION OF RES JUDICATA IN THE CONTEXT OF RIPARIAN RIGHTS

Tacoma argues that *Funk*'s final judgment bars the Richerts' claims as res judicata. We disagree, because Tacoma has failed to prove that *Funk*'s final judgment shares a concurrence of identity with the Richerts' claims or that reasonably diligent parties should have thought to petition the *Funk* court to resolve the Richerts' claims in *Funk*'s final judgment.[4]

A.    *Funk's Final Judgment and the Richerts' Claims*

Tacoma argues that the Richerts' claims are precluded by res judicata, because these claims share a concurrence of identity with *Funk*'s final judgment. We disagree.

In *Funk*, Tacoma condemned the right to take away the use of the Type Two parcels' water, but it did not condemn the right to invade the Richerts' parcels with water. This is evidenced by Tacoma's petition for condemnation in *Funk*.

Although the decrees constitute *Funk*'s final judgment, Tacoma's petition reveals the scope of *Funk*'s subject matter (i.e., the scope of what rights Tacoma was condemning) and its cause of action (i.e., the scope of what Tacoma was asking the court to decide). Thus, Tacoma's petition helps explain the scope of the action below, which allows this court to compare *Funk* with the Richerts' claims to determine if they share a concurrence of identity of subject matter or cause of action.

---

[4] Tacoma argues on policy grounds that if we do not hold that res judicata precludes the Richerts' claims, every dam will, in the future, face potential lawsuits from plaintiffs whose property rights were previously condemned. But Tacoma's policy argument does not overcome long standing res judicata law.

Tacoma's petition in *Funk* requested condemnation of the Type Two parcels because "the volume of water in said river below said dam will be diminished." CP at 1382. This shows that Tacoma sought only the right to deprive the Type Two parcels below the dam of their use of the main stem's water, not the right to overwhelm the Type Two parcels with the main stem's water. Thus, *Funk*'s decrees condemned only the right to the Richerts' parcels' use of the main stem's water that Tacoma actually requested in *Funk*.

The Richerts make claims for (1) violation of riparian rights; (2) failure to provide a proper outflow for channeled surface waters, (3) violation of RCW 4.24.630 (liability for damage to land and property), (4) trespass, (5) nuisance, (6) negligence, (7) inverse condemnation by flooding, and (8) inverse condemnation by groundwater. More important than the names of the Richerts' claims is what they concern. All of the Richerts' claims concern the recent flooding and a rise in the groundwater table on the Richerts' parcels, allegedly caused by Tacoma's release of too much water into the main stem.[5]

1. *Concurrence of Identity with Subject Matter*

Regarding the first element of res judicata's test, concurrence of identity of subject matter, the Richerts' alleged invasion of water onto their parcels does not have the same subject matter with the claims litigated to a final judgment in *Funk*. This is because *Funk*'s final judgment dealt with only deprivation of the parcels' water use, rather than flood or groundwater

---

[5] Tacoma argues that *Funk* precludes the Richerts' claims as res judicata because *some*, but not all, of the Richerts' predecessors in interest filed various individual motions in *Funk* stating broad requests for any and all damages that Tacoma's dams would cause. But the final judgment controls, and random filings from various predecessors in interest cannot illuminate the scope of those decrees.

13

damage to the parcels themselves.[6] *See* RCW 90.03.030; *see also Austin v. City of Bellingham*, 69 Wash. 677, 679, 126 P. 59 (1912).

2. *Concurrence of Identity with Cause of Action*

Regarding the second element, concurrence of identity with cause of action, Tacoma has failed to meet its burden of proving that the Richerts' claims constitute the same cause of action as *Funk*. This is because in *Funk*, Tacoma condemned only the right to deprive the parcel owners of their ability to use water, as revealed by Tacoma's petition. The Richerts now claim that their parcels are being damaged by floods and high water tables, with some land taken in its entirety. Thus *Funk*'s final judgment and this case do not (1) impair the same rights (right to water use vs. right to land use), (2) deal with the same evidence (loss of water use vs. flooding, groundwater tables, and aggradation), (3) allege an infringement of the same rights (right to use water vs. right to use land), or (4) arise out of the same nucleus of facts as the prior action (deprivation of water use vs. deprivation of land use).[7]

---

[6] Tacoma argues that the Richerts concede that they limited their claims to riparian rights violations, citing CP at 4018-19, 4023; Br. of Appellant at 20. However the cited pages in the record contain no such concession.

[7] Even beyond this, *Funk*'s final judgment was limited to condemnation, and the Richerts make a series of claims that have nothing to do with condemnation: (1) failure to provide a proper outflow for channeled surface waters, (2) violation of RCW 4.24.630 (liability for damage to land and property), (3) trespass, (4) nuisance, and (5) negligence. Thus, these five claims, on their face, do not constitute the same "cause of action" as litigated in *Funk*. This is because none of these causes of action were considered by the *Funk* court, as *Funk* was limited to the cause of action of condemnation.

Tacoma has failed to prove that the Richerts' claims for invasion of water share a concurrence of identity with *Funk*'s final judgment in terms of subject matter or cause of action. *See Loveridge*, 125 Wn.2d at 763. For res judicata to preclude the Richerts' claims, Tacoma must prove that the Richerts' claims meet all four elements of res judicata. Because Tacoma cannot prove that the Richerts' claims for invasion of water share a concurrence of identity with *Funk*'s final judgment in terms of subject matter or cause of action, Tacoma cannot prove either of the first two elements of res judicata. *See Loveridge*, 125 Wn.2d at 763. Thus, we need not consider elements three and four of res judicata.[8]

B.     *The Claims that Reasonably Diligent Parties Should Have Raised in Funk.*

Tacoma argues that the Richerts' claims are precluded by res judicata, even if they were not raised in *Funk*, because reasonable parties should have raised them in *Funk*. We disagree.

Res judicata applies to claims that were not resolved in a prior litigation's final judgment, where reasonably diligent parties should have raised those unresolved claims in the prior litigation. *Hisle*, 151 Wn.2d at 865-66. However, in this case, the *Funk* litigants could not have reasonably brought the Richerts' claims at the time of *Funk* for three reasons.

First, the Richerts based their claims on alleged aggradation that occurred over the past eight decades, which reduced the amount of water that the main stem could handle. The *Funk* litigants could not have reasonably predicted such aggradation over eight decades and, thus,

---

[8] As a part of its res judicata argument, Tacoma argues that because it acquired the Richerts' riparian rights in *Funk*, that this gave Tacoma the right to raise the water level up to its natural flow, even if it flows over the Richerts' parcels. We disagree, because as discussed above, Tacoma condemned only the Richerts' parcels' use of water, not the right to cause flood or groundwater damage to their land. *See* RCW 90.03.030; *see also Austin*, 69 Wash. at 679.

reasonable litigants could not have predicted such a phenomenon would combine with the dams to cause water to overflow and damage the Richerts' parcels.

Second, the dams' increased water flow resulted from requirements imposed on Tacoma by FERC litigation for the purpose of water quality and environmental protection, starting in 1988. No reasonable litigant in the 1920's could have predicted the rise of modern environmental protection, nor could a reasonable party have predicted that starting in 1988, a federal agency would require Tacoma to increase the water flow through its dams for water quality and preservation of fish and the environment.

Third, Tacoma explicitly stated in its *Funk* petition that it needed to condemn the *Funk* litigant's riparian rights because "the volume of water in said river below said dam will be diminished." CP at 1382. Thus, Tacoma's petition put the parties on notice only that their parcels would lose the ability to use the river's water, not that their parcels would suffer flood and groundwater damage from an overabundance of water. For these reasons, the *Funk* litigants could not have reasonably predicted that Tacoma would overwhelm the main stem with water and cause water damage to their parcels eight decades after *Funk*. We hold that Tacoma has

No. 43825-9-II

failed to prove that *Funk* bars the Richerts' claims as res judicata.[9] *See Loveridge*, 125 Wn.2d at 763.

    Affirmed.

                                                          
Worswick, C.J.

We concur:

Hunt, J.

Penoyar, J.P.T.

---

[9] The Richerts argue that Tacoma should be estopped from arguing that the *Funk* litigants could have predicted aggradation because Tacoma argued the opposite in an unpublished case. *See Indemnity Ins. Co. of N. Am. v. City of Tacoma*, noted at 158 Wn. App. 1022, 2010 WL 4290648, at *3-*4 (2010). We do not address this issue because the superior court did not resolve this issue in its final judgment and, thus, the issue is outside the scope of this appeal of that final judgment.

    Tacoma argues alternatively that even if res judicata did not preclude the Richerts' claims, Tacoma has no duty to maintain its dams' artificial diversion of water away from the main stem and, thus, it cannot face liability for merely decreasing the amount of water that its dams divert away from the main stem. We do not address this issue because it concerns Tacoma's general duty to maintain its artificial diversion of water from the main stem. This does not relate to the effect of *Funk* on the Richerts' claims, and is thus outside this appeal's limited scope.

    Finally, we do not decide all "issues with regard to *Tacoma v. Funk*" as requested by the superior court's final judgment, because that would constitute an impermissible advisory opinion. CP at 63-64; *see To-Ro Trade Shows v. Collins*, 144 Wn.2d 403, 416-17, 27 P.3d 1149 (2001).

17