# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| TATYANA MASON, | No. 51642-0-II |
| Appellant, | |
| v. | |
| JOHN MASON AND LAURIE ROBERTSON, | PUBLISHED IN PART OPINION |
| Respondents. | |

CRUSER, J. — Tatyana Mason appeals from the trial court's orders dismissing personal injury claims she filed against her former husband, John Mason, and his attorney, Laurie Robertson, who represented John[1] during the dissolution proceedings. She argues that the trial court erred in dismissing her abuse of process and intentional infliction of emotional distress claims because (1) the trial court failed to apply the proper standard of review under CR 12(b)(6), (2) she was denied a due process and statutory right when the trial courts in prior family law proceedings and in the instant case did not provide her with an interpreter, (3) the statute of limitations does not bar her claims, (4) neither res judicata nor collateral estoppel bar her claims, (5) the litigation privilege does not apply to bar her abuse of process claim against Robertson, (6) her abuse of process and intentional infliction of emotional distress claims should have survived

---

[1] This opinion will refer to members of the same family by their first names to avoid confusion.

both Robertson's and John's motions to dismiss, and (7) sanctions should not have been awarded to John and Robertson under CR 11 or RCW 4.84.185. Tatyana also (8) moved for sanctions on appeal, alleging that John's appellate counsel has a conflict of interest and that the statement of facts in his response brief is improperly argumentative.

In the published portion of this opinion, we hold that (1) the summary judgment standard of review applies because the trial court considered material beyond the pleadings; (2) the trial court abused its discretion when it failed to determine whether Tatyana required an interpreter in the instant case; (3) the statute of limitations does not bar Tatyana's claims; (4) the doctrines of res judicata and collateral estoppel do not bar Tatyana's claims; and (5) litigation privilege does not bar Tatyana's abuse of process claim against Robertson or her intentional infliction of emotional distress claims against John or Robertson. In the unpublished portion of this opinion, we hold that (6) the trial court erred in dismissing Tatyana's abuse of process and intentional infliction of emotional distress claims against John on summary judgment; (7) the trial court abused its discretion when it awarded sanctions pursuant to CR 11 to John and Robertson and pursuant to RCW 4.84.185 to Robertson; and we (8) deny Tatyana's motion for appellate sanctions.

Accordingly, we reverse the trial court's orders granting Robertson's and John's motions to dismiss, and we remand for further proceedings consistent with this opinion.

FACTS

I. MARRIAGE AND DISSOLUTION

Tatyana Mason came to the United States from the Ukraine under a fiancé visa sponsored by John Mason. The two married several months later, on August 19, 1999. While married, Tatyana and John had two children.

In 2007, a family law court entered a civil finding of domestic violence against John, and Tatyana obtained a domestic violence protection order. Soon after, John hired Laurie Robertson to represent him as his attorney, and he filed a petition for dissolution.

The decree of dissolution, final parenting plan, and child support order were entered in 2008. Initially, the parents shared equal residential time with their children. John was ordered to pay child support to Tatyana. In determining the support amounts, the trial court found that Tatyana was "voluntarily unemployed" and imputed income to her. Clerk's Papers (CP) at 565.

II. JOHN'S PETITION FOR A PARENTING PLAN MODIFICATION

In 2011, John filed a petition to modify the parenting plan, alleging that Tatyana was physically and emotionally abusive towards their children. Child Protective Services investigated statements the children made regarding physical abuse and determined the allegations were "'founded.'" *Id.* at 603. John also obtained an emergency order granting him custody of the children while the modification was adjudicated. Tatyana's time with the children was diminished to supervised visitation.

The trial court appointed a guardian ad litem (GAL) to investigate the allegations. The GAL concluded that Tatyana engaged in actions that rose to the level of abuse and recommended that John remain the primary custodial parent while Tatyana maintained supervised visitation.

After several continuances, the matter proceeded to trial, during which Tatyana was represented by counsel. In addition to testimony from the parents and the GAL, the trial court heard testimony from Sandra Hurd, the children's former therapist. During trial, Hurd and the GAL testified regarding disclosures of abuse the children made to them. The trial court found this testimony credible.

On November 25, 2013, the trial court ruled that due to a substantial change in circumstances, modification of the parenting plan was in the children's best interest. It entered a finding of abuse regarding Tatyana under RCW 26.09.191.

The trial court also found that despite the prior domestic abuse finding against John in 2007, there was "no evidence to support any additional finding of domestic violence," and John did not continue to pose a current concern regarding his ability to provide care for the children. CP at 603. The trial court further found that Tatyana did not exercise all of the visitation she had available with her children as allowed by various court orders while the modification litigation was ongoing. In calculating child support obligations in light of the modified parenting plan, the trial court concluded that Tatyana was voluntarily unemployed and imputed income to her. Tatyana was ordered to pay $412.04 in child support to John for both children.

In addition, the trial court entered an order restraining Tatyana from contacting John and her children. However, the trial court found that the children would benefit from a healthy relationship with their mother and provided for a reunification plan. Tatyana could work with the children's new counselor and a therapist to rebuild the relationship, with a court case coordinator monitoring the progress.

No. 51642-0-II

III. TATYANA'S 2015 APPEAL

After the trial court denied Tatyana's motion for reconsideration, Tatyana appealed to this court. *In re Marriage of Mason*, No. 45835-7-II, slip op. at 1 (Wash. Ct. App. July 7, 2015) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2045835-7-II%20%20Unpublished%20Opinion.pdf. Tatyana argued that the trial court's findings were not supported by substantial evidence and that the trial court erred in denying her motion for reconsideration. *Id.* Tatyana did not appeal the trial court's imputation of income or its finding that she was voluntarily unemployed. We affirmed, holding that substantial evidence supported the trial court's findings of abuse and that the trial court did not abuse its discretion in denying her motion for reconsideration. *Id.* at 8. The mandate issued, terminating review of the case on August 7, 2015.

IV. TATYANA'S MOTION TO VACATE THE CHILD SUPPORT ORDER

Tatyana began the citizenship naturalization process on September 9, 2013 by submitting a form to the United States Citizenship and Immigration Services (USCIS), and she appeared for an interview on December 2, 2013. USCIS denied her application on May 5, 2014, because of the protection orders entered against her as well as the child support that she owed. During the interview, Tatyana explained that she did not apply for naturalization before the orders were entered because of the abusive and controlling behaviors she experienced while married to John, her difficulty understanding English, and the strain of the contentious divorce proceedings. USCIS explained that the circumstances she described were "difficult and not extenuating," and it informed Tatyana that to be eligible for naturalization, she had to demonstrate that the protection order was terminated and that she did not owe child support. CP at 774.

5

Tatyana was a conditional permanent resident, meaning Tatyana and John were required to jointly petition to remove the conditions on her residency and appear for an interview within two years of the date Tatyana became a conditional permanent resident. However, the conditions were never removed, terminating Tatyana's conditional resident status. 8 U.S.C. § 1186a(c)(2). In addition, as a result of Tatyana's past due child support, the Division of Child Support was unable to release her passport to her until she paid the balance in full.

On September 1, 2015, Tatyana filed a motion pro se, requesting that the trial court dismiss the amount of child support owed. She asserted that in the 2013 child support order, the trial court incorrectly imputed income to her and that the resulting impact on her immigration status prevented her from finding employment. The trial court construed Tatyana's motion as a motion to vacate the 2013 child support order under CR 60. Tatyana argued that the trial court should vacate the child support order because in entering the 2013 order, the trial court was not aware that John filed an I-864 affidavit in 1999, promising the United States government that he would provide continual financial support to Tatyana.

In response, John denied that he ever completed or filed the I-864 affidavit, raising the issue of whether the form existed at all. John further denied that he would have been required to complete an I-864 affidavit as part of the fiancé visa application. The trial court held a three-day hearing on the narrow issue of the form's existence. Following the hearing, the trial court found that the form did exist and that it was filed shortly after the parties were married as a necessary part of the process to convert Tatyana's fiancé visa to a permanent residency. It concluded that the I-864 affidavit represented a continuing obligation that John owed to Tatyana.

6

In addition, the trial court found that John and Tatyana failed to seek removal of the conditions within the two-year period, which the trial court attributed to the domestic abuse John had committed against Tatyana and John's waning desire to sponsor Tatyana's permanent residency. The trial court further found that Tatyana's immigration status rendered her unable to work and that the amount of child support she owed would prevent her from ever attaining permanent residency.

The trial court concluded that John's support obligation to Tatyana through the I-864 affidavit was "such a significant factor in this case that to set child support without its consideration creates an unjust result." CP at 88. The trial court vacated the November 25, 2013 child support order as well as any amounts Tatyana owed pursuant to that order.

Separately, the trial court entered a factual finding noting that Tatyana had not had interpretive services in the divorce proceedings prior to the trial on the existence of the I-864 affidavit, during which she represented herself. The trial court was "persuaded that [Tatyana had] difficulty understanding and communicating in English," and that she "clearly benefited from the provision of interpretive services." *Id.* at 87.

Due to John's statements in a declaration denying the existence of the I-864 affidavit and the cost of litigation expended in determining whether the form existed, the trial court imposed CR 11 sanctions against John in favor of Tatyana. In its oral ruling, the trial court stated that while "clients are entitled to aggressive advocacy . . . the advocacy in this case presented an untrue presentation to the court which created unnecessary litigation." *Id.* at 130.

## V. JOHN'S 2018 APPEAL

John appealed to this court. *In re Marriage of Mason*, No. 49839-1-II, slip op. at 1 (Wash. Ct. App. July 31, 2018) (unpublished) http://www.courts.wa.gov/opinions/pdf/D2%2049839-1-II%20Unpublished%20Opinion.pdf. He challenged the trial court's decision to vacate the order of child support, the trial court's decision to award Tatyana expert witness fees under RCW 26.09.140, and the imposition of CR 11 sanctions. *Id.* We reversed, holding that under CR 60(b)(11), the revelation of the I-864 affidavit did not constitute an "extraordinary circumstance" warranting vacation of the final child support order. *Id.* at 15. In holding that the discovery of the I-864 affidavit did not amount to an extraordinary circumstance, we noted the lack of a trial court finding that John "knowingly withheld" the existence of the I-864 affidavit from Tatyana when her child support obligation was calculated in the 2013 modification proceedings. *Id.* at 13.

On review of the trial court's imposition of CR 11 sanctions, we held that the trial court did not provide sufficient findings to support imposition of CR 11 sanctions on John, though we affirmed the award of expert witness fees. *Id.* at 16, 17. While we observed that the trial court stated in its oral ruling that John had "improperly represented facts regarding filing the I-864 affidavit in a declaration statement," we acknowledged that the order neither included a finding to that effect nor incorporated the oral ruling. *Id.* at 17.

The supreme court denied Tatyana's petition for review on March 6, 2019. *In re Marriage of Mason*, 192 Wn.2d 1024, 435 P.3d 272 (2019).

## VI. TATYANA'S TORT LAWSUIT

Tatyana filed a pro se complaint on March 13, 2017, which she later amended on June 30, 2017. She named both John and Robertson as defendants. Tatyana claimed that she was denied

rights to procedural due process when she was not provided with an interpreter during any of the proceedings before the 2016 trial. In addition, Tatyana's complaint included allegations of abuse of process, fraudulent misrepresentation, alienation of affection, malicious prosecution, and intentional infliction of emotional distress. Tatyana also alleged that Robertson had committed a number of ethical violations under the Rules of Professional Conduct. Tatyana attached 26 exhibits to her complaint that included declarations, letters, and pages excerpted from prior trial court proceeding transcripts, among other types of documents.

Tatyana's complaint detailed the difficult circumstances she faced following the dissolution and modification proceedings. Tatyana explained that as a result of the dissolution proceedings, her immigration status was damaged such that she has been unable to obtain legal work authorization. Due to her lack of legal work authorization, Tatyana has no source of income and has become homeless. To meet her basic needs, Tatyana relies on assistance from "friends[ ] and strangers" who allow her to "couch surf[ ]" on occasion. CP at 3. In addition, as a result of the trial court's orders, Tatyana faces an intractable financial barrier to regaining contact with her children. The cumulative effect of her situation has caused Tatyana to suffer extensive damage to her mental health.

## A. ROBERTSON'S MOTION TO DISMISS

In response to Tatyana's complaint, Robertson filed a motion to dismiss under CR 12(b)(6), and alternatively, a motion for summary judgment, arguing that each claim raised by Tatyana was barred under the doctrine of absolute immunity, res judicata or collateral estoppel, and the statute of limitations. Robertson also asserted that the claims did not survive CR 12(b)(6) or summary

judgment on their merits. Robertson requested sanctions pursuant to RCW 4.84.185 and CR 11, alleging that Tatyana's claims were frivolous.

The trial court held a hearing on Robertson's motion on August 18, 2017, during which Tatyana presented her argument pro se. The trial court granted Robertson's motion to dismiss and awarded attorney fees and costs to Robertson in the amount of $4,283.50.

After the trial court's oral ruling, Tatyana filed a motion for reconsideration, this time represented by an attorney under a limited representation agreement. The trial court held an additional hearing on September 1, 2017, and Tatyana's attorney appeared on her behalf. Because the attorney was new to the case and the record was extensive, his briefing and argument focused on Tatyana's abuse of process claim. Tatyana argued that neither the statute of limitations nor absolute immunity barred her claims against Robertson and that the trial court erred in determining her claims were frivolous. Focusing on the abuse of process allegation, Tatyana argued that she raised a claim in her complaint on which relief could be granted.

The trial court disagreed and upheld its earlier ruling. It granted Robertson's motion, but it reduced the attorney fee award from $4,283.50 to $3,500. In making its determination, the trial court considered the motions, briefs and memoranda in support or opposition, declarations, and filings from the underlying family law case. The trial court concluded that the statute of limitations had passed as to all claims and that Robertson was absolutely immune from suit, demonstrating that Tatyana had "failed to conduct a reasonable inquiry in the factual and legal basis of her claims." *Id.* at 40. In addition, the trial court found that Tatyana's initial pro se amended complaint and responsive briefing were "difficult to understand," but when "[c]ounsel appeared on her behalf

for the her [sic] motion for [r]econsideration," the trial court was able to "reach a fuller understanding of [Tatyana's] claims and supporting arguments." *Id.* at 41.

The trial court then concluded that each claim alleged against Robertson must be dismissed with prejudice for failure to "plead or state any claim upon which relief can be granted." *Id.* It awarded Robertson attorney fees pursuant to RCW 4.84.185 and CR 11 because the claims were barred by the doctrine of absolute immunity and the statute of limitations. The court later struck $7.80 in costs that it had previously awarded to Robertson and reaffirmed the $3,500 attorney fee award that it granted prior to Tatyana's motion for reconsideration.

B. JOHN'S MOTION TO DISMISS

John, for his part, filed a motion to dismiss under CR 12(b)(6) and, alternatively, a motion for summary judgment. He argued that Tatyana's claims should be dismissed because they were barred under the doctrines of res judicata or collateral estoppel, witness immunity, and the statute of limitations. John asserted that even if the claims could not be dismissed on those grounds, they nevertheless failed on their merits.

Prior to filing his motion to dismiss, John moved to strike 11 of the 26 exhibits Tatyana had attached her complaint. He asserted that the evidence he identified should not be considered

by the trial court under CR 56(e)[2] because it did not assert facts based on personal knowledge, it was based on hearsay, or it was conclusory in its allegations.

The trial court held a hearing on the motion to dismiss and the motion to strike Tatyana's exhibits and granted both motions. Tatyana was represented by counsel at this hearing. The trial court ruled that "there is no issue of material fact as to the relief sought," and that "the [c]omplaint should be dismissed based upon CR 12(b)(6) and CR 56." *Id.* at 71-72. The trial court agreed that the exhibits John alleged did not satisfy the requirements for competent evidence on summary judgment should be stricken. Lastly, the trial court concluded that Tatyana's lawsuit was "brought for an improper purpose, and that the lawsuit lacks any good faith basis in fact, or in law." *Id.* at 72. Consequently, the trial court entered sanctions against Tatyana under CR 11 in the amount of $22,321.49.

Tatyana appeals the trial court's order dismissing claims against Robertson; the trial court's separate order awarding Robertson $3,500 in attorney fees; and the trial court's order dismissing her claims against John, striking her exhibits, and awarding him attorney fees and costs under CR 11.

---

[2] CR 56(e) provides that,

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of a pleading, but a response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

DISCUSSION

## I. STANDARD OF REVIEW

### A. LEGAL PRINCIPLES

Dismissal under CR 12(b)(6) is only appropriate "'if the court concludes, beyond a reasonable doubt, the plaintiff cannot prove any set of facts which would justify recovery.'" *FutureSelect Portfolio Mgmt., Inc. v. Tremont Grp. Holdings, Inc*., 180 Wn.2d 954, 962, 331 P.3d 29 (2014) (internal quotation marks omitted) (quoting *Kinney v. Cook*, 159 Wn.2d 837, 842, 154 P.3d 206 (2007)). The facts alleged in the complaint must be accepted as true, and a court may consider hypothetical facts that could support recovery. *Id.* Dismissal on this basis "'should be granted sparingly and with care and only in the unusual case in which plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief.'" *J.S. v. Village Voice Media Holdings, LLC*, 184 Wn.2d 95, 100, 359 P.3d 714 (2015) (internal quotation marks omitted) (quoting *Cutler v. Phillips Petrol. Co*., 124 Wn.2d 749, 755, 881 P.2d 216 (1994)). We review a dismissal under CR 12(b)(6) de novo. *FutureSelect*, 180 Wn.2d at 962.

Summary judgment is appropriate where there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. CR 56(c). We review the decision to grant summary judgment de novo, and we engage in the same inquiry as the trial court, viewing all facts and reasonable inferences in the light most favorable to the nonmoving party. *Associated Press v. Wash. St. Leg.*, 194 Wn.2d 915, 920, 454 P.3d 93 (2019).

A party may move for summary judgment either by setting forth its own version of the facts or by stating that the nonmoving party has failed to present sufficient evidence to support its claims. *Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc.*, 162 Wn.2d 59, 70, 170

P.3d 10 (2007). A moving party proceeding using the latter approach must "'identify those portions of the record, together with the affidavits, if any, which . . . demonstrate the absence of a genuine issue of material fact." *Pac. Nw. Shooting Park Ass'n v. City of Sequim*, 158 Wn.2d 342, 351, 144 P.3d 276 (2006) (alteration in original) (quoting *Guile v. Ballard Cmty. Hosp.*, 70 Wn. App. 18, 22, 851 P.2d 689 (1993)).

Once the moving party has satisfied this initial showing, the burden then shifts to the nonmoving party to set forth admissible evidence demonstrating that a genuine issue of material fact exists. *Indoor Billboard*, 162 Wn.2d at 70. The nonmoving party is not permitted to rely on speculation or argumentative assertions. *Brummett v. Wash.'s Lottery*, 171 Wn. App. 664, 674, 288 P.3d 48 (2012). Summary judgment is appropriate if the nonmoving party cannot satisfy this burden. *Indoor Billboard*, 162 Wn.2d at 70.

When deciding a motion to dismiss, consideration of materials in addition to the complaint on a CR 12(b)(6) motion "is permissible so long as the court can say, 'no matter what facts are proven within the context of the claim, the plaintiffs would not be entitled to relief.' " *Worthington v. Westnet*, 182 Wn.2d 500, 505, 341 P.2d 995 (2015) (quoting *Haberman v. Wash. Pub. Power Supply Sys.*, 109 Wn.2d 107, 121, 744 P.2d 1032, 750 P.2d 254 (1987)). Otherwise, if a superior court considers and does not exclude matters outside the pleadings, the CR 12(b)(6) motion must be treated as a motion for summary judgment. *Id.* at 505-06. We have previously held that where the superior court relied upon a declaration and attached exhibits filed in opposition to a motion to dismiss, the motion to dismiss was properly treated as a motion for summary judgment. *Brummett,* 171 Wn. App. at 674.

B. APPLICATION

Tatyana argues that because the trial court dismissed her claims against John and Robertson for failure to state a claim on which relief could be granted, we are required to treat John's and Robertson's motions as motions to dismiss under CR 12(b)(6) and apply the corresponding standard of review. We disagree.

Here, both Robertson and John characterized their motions as CR 12(b)(6) motions to dismiss, or alternatively, motions for summary judgment. In its order granting each motion, the trial court stated that it had reviewed declarations and filings in addition to the complaint. As discussed below, reliance on declarations and other documents is essential to resolve whether Tatyana's complaint was filed within the statute of limitations, an issue raised in both Robertson's and John's motions. The trial court expressly dismissed the complaint against Robertson in part based on the statute of limitations.

In addition, when granting John's motion, the trial court considered whether evidence Tatyana submitted in support of her claim satisfied the requirements for competent evidence under CR 56(c), and it concluded that there were no genuine issues of material fact and that John was entitled to judgment in his favor as a matter of law. Therefore, the record reflects that the trial court relied upon declarations and other filings in deciding both motions.

We treat both motions as motion for summary judgment and will apply that standard of review.

## II. THE RIGHT TO AN INTERPRETER

Tatyana argues that she was denied a constitutional right and a statutory right to have an interpreter present during the 2011 parenting plan modification proceedings and during the trial

court proceedings in this case. Neither Robertson nor John address Tatyana's claim that she was entitled to an interpreter.

Whether Tatyana should have been appointed an interpreter during the prior family law proceedings is not properly before this court. In the 2011 case, the mandate terminating review was issued in August of 2015. Issues related to Tatyana's need for an interpreter should have been raised during her appeal from those proceedings. RAP 5.2(a). However, with respect to the trial court proceedings in the instant case, the trial court abused its discretion when it failed to determine whether Tatyana required an interpreter.

Although Tatyana argues that her right to an interpreter claim is grounded in due process under the United States Constitution, because this claim arose in the context of a civil proceeding, her right is statutory as opposed to constitutional in nature. In criminal contexts, Washington courts have recognized a due process right to an interpreter based on a criminal defendant's Sixth Amendment right to confront witnesses and to be present at trial. *State v. Gonzales-Morales*, 138 Wn.2d 374, 379, 979 P.2d 826 (1999). The rights arising under the Sixth Amendment are inapplicable to civil cases. *See In re Det. of Stout*, 159 Wn.2d 357, 369, 150 P.3d 86 (2007) (recognizing that "[i]t is well-settled that the Sixth Amendment right to confrontation is available only to criminal defendants.").

In civil contexts, the right to an interpreter is guaranteed under RCW 2.43.030(1)(c). This statute provides that "when a non-English-speaking person is involved in a legal proceeding, the appointing authority *shall* appoint a qualified interpreter." RCW 2.43.030(1)(c) (emphasis added).

The statutory right to an interpreter under ch. 2.43 RCW is designed to advance the declared policy of this state:

> to secure the rights, constitutional or otherwise, of persons who, because of a non-English-speaking cultural background, are unable to readily understand or communicate in the English language, and who consequently cannot be fully protected in legal proceedings unless qualified interpreters are available to assist them.

RCW 2.43.010. A "'non-English-speaking person,'" is "any person involved in a legal proceeding who cannot readily speak or understand the English language." RCW 2.43.020(4).

Unless the "lack of fluency or facility" in English is apparent, a trial court does not have an affirmative obligation to appoint an interpreter. *Cuesta v. State Dep't of Emp't Sec.*, 200 Wn. App. 560, 567, 402 P.3d 898 (2017). However, where a trial court is put on notice that a party is not readily able to speak English, the trial court has a duty to make an inquiry into whether a court-appointed interpreter is, in fact, necessary. *See id.*; *see also In re Pers. Restraint of Khan*, 184 Wn.2d 679, 690 n.4, 363 P.3d 577 (2015); *State v. Woo Won Choi*, 55 Wn. App. 895, 901–02, 781 P.2d 505 (1989). We will not disturb a trial court's decision regarding appointment of an interpreter absent an abuse of discretion. *Cuesta*, 200 Wn. App. at 567.

Here, Tatyana put the trial court on notice of her lack of fluency in English by filing a complaint that included multiple statements expressing the difficulty she experienced understanding the prior legal proceedings due to her language limitations. Among the allegations in her pro se complaint, Tatyana explained that despite her challenges understanding English there was "no evidence that Tatyana ha[d] interpreter service" prior to the 2016 trial on the I-864 affidavit. CP at 3. Elsewhere, Tatyana alleged that the divorce and modification proceedings were like a "babble of voices," from her perspective, and that she struggled to communicate with her English speaking attorneys. *Id*. at 8.

In spite of such notice, the record before us lacks any indication that the trial court made an inquiry into Tatyana's need for an interpreter before the hearing on Robertson's motion to dismiss. In addition, the record reflects that the trial court failed to assess whether Tatyana could readily understand and communicate in English prior to dismissing each of Tatyana's claims against Robertson.

Although Tatyana's complaint was replete with references to her language difficulties, the trial court held a hearing on Robertson's motion to dismiss during which Tatyana appeared pro se and without the assistance of an interpreter. Following Tatyana's motion for reconsideration, the trial court entered a finding stating that it found "[Tatyana's] Amended Complaint and [ ] briefing difficult to understand." *Id*. at 41. Thus, despite its difficulty understanding Tatyana's complaint and briefing, and despite Tatyana's many statements indicating her language issues, the trial court moved forward with a hearing on a dispositive motion without inquiring into whether an interpreter was necessary.

In waiting until after the motion for reconsideration to acknowledge Tatyana's language issues, the trial court contravened the declared purpose of ch. 2.43 RCW to ensure that those who cannot "readily understand or communicate in the English language," are "fully protected in legal proceedings." RCW 2.43.010. The issue of whether an interpreter is necessary should not be resolved in hindsight, after a party's language ability has been tested in a dispositive proceeding without the assistance of an interpreter, where the trial court had prior notice of a potential language difficulty. *See* RCW 2.43.010.

Here, it was not until after the motion for reconsideration, at which Tatyana was represented by an attorney, that the trial court stated that during the initial hearing on Robertson's

motion to dismiss, Tatyana "articulated quite well. Her pleadings were difficult to understand, but she was articulate; unsuccessful, but articulate." Verbatim Report of Proceedings (VRP) (Nov. 3, 2017) at 7. In its findings, the trial court also struck the statement that it found Tatyana's complaint and briefing difficult to understand because of her "limited English proficiency." CP at 41. Regardless of whether the trial court accurately assessed Tatyana's ability to speak and understand English following her pro se argument, this evaluation was too late to provide meaningful access to the right to an interpreter guaranteed under RCW 2.43.030(1)(c). The same is true of the fact that an interpreter was made available to Tatyana during the hearing on John's motion to dismiss and during the hearing on John's attorney fee and cost award. The trial court thus abused its discretion when it did not inquire into Tatyana's ability to understand and communicate in English until after the hearing on Tatyana's motion for reconsideration. On remand, the trial court must evaluate Tatyana's need for an interpreter in future proceedings.

III. STATUTE OF LIMITATIONS

Tatyana argues that the trial court erred in dismissing her claims based on the statute of limitations. She contends that the statute of limitations does not bar her claims because she filed her complaint on March 13, 2017, and she did not discover that John had failed to remove the conditions from her conditional permanent residency until February 27, 2015. Robertson responds that Tatyana's cause of action accrued in 2013, when the trial court entered the child support order, when Tatyana met with immigration officials while she applied for naturalization, or when Tatyana's attorney during the parenting plan modification proceedings agreed with the child support order imputing income on Tatyana. John contends that Tatyana's allegations pertain to acts that occurred between 2008 and 2011, and that the statute of limitations has long since expired

for any tort claims arising from those acts. We agree with Tatyana that her claims are not barred under the applicable statute of limitations.

A. LEGAL PRINCIPLES

The statute of limitations for a tort action is three years. RCW 4.16.080(2). It begins to run at the point at which a plaintiff's cause of action accrues. *Nichols v. Peterson NW, Inc.*, 197 Wn. App. 491, 500, 389 P.3d 617 (2016). Generally, to determine when a cause of action accrues, a court will apply the "discovery rule." *Killian v. Seattle Pub. Schs.*, 189 Wn.2d 447, 454, 403 P.3d 58 (2017). Under the discovery rule, "'a cause of action accrues when the plaintiff knew or should have known the essential elements of the cause of action.'" *Id.* (quoting *Allen v. State*, 118 Wn.2d 753, 757-58, 826 P.2d 200 (1992)). The discovery rule postpones the running of a statute of limitations until the date that the plaintiff "through exercise of due diligence, should have discovered the basis for the cause of action, even if actual discovery did not occur until later." *Id.* at 455.

Whether the plaintiff knew or should have known that a cause of action has accrued through the exercise of due diligence is a question of fact. *Allen*, 118 Wn.2d at 760. However, "factual questions may be decided as a matter of summary judgment if reasonable minds can reach but one conclusion." *Id.*

B. APPLICATION

Tatyana's abuse of process and intentional infliction of emotional distress claims are both based on allegations that John and Robertson pursued the parenting plan modification in 2011 in order to continue John's pattern of abuse and control over Tatyana, culminating in Tatyana's loss of legal permanent resident status resulting from the entry of the child support and protection

orders against her. Therefore, Tatyana's causes of action accrued when Tatyana knew or should have known that the results of the parenting plan proceedings damaged her immigration status.

Robertson contends that Tatyana should have been on notice of the damage to her legal resident status during the naturalization interviews, which occurred more than three years before Tatyana filed her complaint. However, even if Tatyana was put on notice that her application for naturalization would be denied at that interview, this fact does not prove that Tatyana was also notified that her permanent resident status was in jeopardy at that time. The letter denying Tatyana's naturalization application describes Tatyana's interview and states that her naturalization application was denied as a result of the protection order and child support debt. This letter does not mention whether Tatyana's interviewer informed Tatyana that she would be unable to renew her permanent residency card for the same reason. Nor does that letter state that Tatyana was informed at the interview that she was a conditional permanent resident as opposed to a permanent resident. At minimum, the issue of whether Tatyana was put on notice that she would be ineligible to renew her permanent resident card during this interview is a question of fact on which reasonable minds could differ. *Id.* Summary judgment dismissal on this basis would have been improper. *See id.*

Here, Tatyana's cause of action accrued on May 5, 2014 at the earliest, when she was informed in the letter denying naturalization that "to be eligible for naturalization *and permanent resident card* [she] must demonstrate that [she is] a person of good moral character." CP at 774 (emphasis added). At that point, Tatyana should have known that because she was denied naturalization due to her protection order and child support debt, her permanent resident status could have been in jeopardy. Because Tatyana filed her complaint on March 13, 2017, within three

years of receiving the May 5, 2014 letter, Tatyana's complaint is not barred by the statute of limitations. RCW 4.16.080(2); *see also Killian*, 189 Wn.2d at 455.

### IV. RES JUDICATA AND COLLATERAL ESTOPPEL

John and Robertson argue that the trial court properly dismissed Tatyana's claims because they are barred under the doctrines of res judicata and collateral estoppel. Tatyana contends that her tort claims are distinct from the family law proceedings and that neither res judicata nor collateral estoppel bar these claims. We agree with Tatyana that her claims are not barred under either res judicata or collateral estoppel.

### A. COLLATERAL ESTOPPEL

Collateral estoppel only bars claims that were actually litigated. *Schibel v. Eymann*, 189 Wn.2d 93, 99, 399 P.3d 1129 (2017). A party arguing that collateral estoppel applies must show that "(1) the issue in the earlier proceeding is identical to the issue in the later proceeding, (2) the earlier proceeding ended with a final judgment on the merits, (3) the party against whom collateral estoppel is asserted was a party, or in privity with a party, to the earlier proceeding, and (4) applying collateral estoppel would not be an injustice." *Id.*

Here, neither Tatyana's intentional infliction of emotional distress claim nor her abuse of process claim were "actually litigated" in the prior family law proceedings. *Id.* Nor are her tort claims "identical" to any issue addressed in the earlier family law proceedings. *Id.* Accordingly, collateral estoppel does not apply.

### B. RES JUDICATA

Res judicata precludes the relitigation of an entire claim that was "litigated to a final judgment or [that] could have been litigated to a final judgment." *Richert v. Tacoma Power Util.*,

179 Wn. App. 694, 704, 319 P.3d 882 (2014). Courts considering res judicata must be careful not to deny a litigant their day in court. *Id.* A second claim is barred under the doctrine of res judicata if the claims are identical in "(1) subject matter, (2) cause of action, (3) persons and parties, and (4) quality of the persons for or against whom the claim is made." *Id.*

John and Robertson both argue that Tatyana's tort claims are precluded by res judicata because CR 11 sanctions were available in the prior family law proceedings. This argument is without merit. A motion for CR 11 sanctions does not involve the same cause of action as either an abuse of process or intentional infliction of emotional distress claim. To determine if two claims share an identical cause of action, courts consider whether "(1) prosecuting the second action would destroy rights or interests established in the first judgment, (2) the evidence presented in the two actions is substantially the same, (3) the two actions involve infringement of the same right, and (4) the two actions arise out of the same transactional nucleus of facts." *Marshall v. Thurston County*, 165 Wn. App. 346, 354, 267 P.3d 491 (2011).

With the exception of the arising out of the same nucleus of transactional facts factor, these considerations weigh in Tatyana's favor. Advancing either tort claim against John and Robertson would not impact their rights established in the family law proceedings, the evidence required to prove a baseless filing in moving for CR 11 sanctions is qualitatively different than that required to prove abuse of process or intentional infliction of emotional distress, and distinct rights are implicated in the context of CR 11 than in Tatyana's tort claims. Accordingly, neither res judicata nor collateral estoppel justify dismissal of Tatyana's tort claims.

V. LITIGATION PRIVILEGE

Tatyana argues that the trial court erred when it dismissed her claims against Robertson on the basis of Robertson's immunity from liability arising pursuant to Robertson's role as John's attorney throughout the family proceedings. Robertson responds that she was entitled to immunity from liability and that the trial court properly dismissed each of Tatyana's claims on this basis. John contends that he is entitled to immunity from liability, but his argument on this point is limited to Tatyana's intentional infliction of emotional distress claim.

While reviewing this case, pursuant to RAP 10.6(c), we invited interested parties to submit briefing as amicus curiae on the issue of "[w]hether an attorney enjoys absolute immunity from liability in a lawsuit alleging abuse of process." Letter from Derek M. Byrne, Clerk of the Court, Wash. Ct. of Appeals, Div. II, (Sept. 17, 2020), *Mason v. Mason*, No. 51642-0-II. Amici Northwest Justice Project, Columbia Legal Services, Northwest Immigrant Rights Project, and the Fred T. Korematsu Center for Law and Equality (collectively amici) responded to our invitation and argued that under certain circumstances, an attorney may engage in statements or conduct that are not immune from subsequent civil liability.

We agree with Tatyana and amici that an attorney is not always immune from liability for conduct or statements made when acting as an attorney. As applied to the particular facts of this case, we disagree with Robertson that she was entitled to immunity from Tatyana's allegations for both Tatyana's abuse of process and intentional infliction of emotional distress claims. We further disagree with John that his position as a party in a lawsuit entitles him to immunity from Tatyana's intentional infliction of emotional distress claim.

A. LEGAL PRINCIPLES

Where an individual is entitled to the shield of "absolute privilege" or "immunity," the individual is absolved of all liability. *Bender v. City of Seattle*, 99 Wn.2d 582, 600, 664 P.2d 492 (1983). "Absolute privilege is usually confined to cases in which the public service and administration of justice require complete immunity." *Id.* Therefore, to substantiate "the extraordinary breadth of an absolute privilege," there must be some "compelling public policy justification." *Id.*

Immunity from civil liability afforded to witnesses, attorneys, and parties in a lawsuit is available only if the complained-of statements or conduct bear "'some relation'" to a judicial proceeding. *Deatherage v. Examining Bd. of Psychol.*, 134 Wn.2d 131, 135, 948 P.2d 828 (1997) (discussing litigation privilege for expert witnesses) (quoting Restatement (Second) of Torts § 588 (1977)); *see also McNeal v. Allen*, 95 Wn.2d 265, 267, 621 P.2d 1285 (1980) (discussing litigation privilege for attorneys and parties). For example, in the defamation context, "[a]llegedly libelous statements, spoken or written by a party or counsel in the course of a judicial proceeding, are absolutely privileged *if they are pertinent or material to the redress or relief sought*." *McNeal*, 95 Wn.2d at 267 (emphasis added). Therefore, although immunity for witnesses, attorneys, and parties is often discussed as "absolute immunity," or "absolute privilege," *see e.g.*, *Bruce v. Byrne-Stevens & Assocs. Eng'rs, Inc.*¸ 113 Wn.2d 123, 137, 776 P.2d 666 (1989) (plurality opinion), we believe the term "litigation privilege," is a more apt descriptor in this context. Accordingly, where litigation privilege applies, witnesses, attorneys, and parties are immune from liability.

Litigation privilege as applied to "witnesses in judicial proceedings" protects witnesses "from suit based on their testimony." *Id. at* 125. In *Bruce*, the supreme court extended the litigation

privilege afforded witnesses defending against defamation claims to preclude any potential claim for civil liability, reasoning that "the chilling effect of the threat of subsequent litigation," is the same no matter the theory on which the suit is based. *Id.* at 132.

As it applies to attorneys, litigation privilege is based on "a public policy of securing to them as officers of the court the utmost freedom in their efforts to secure justice for their clients." *McNeal*, 95 Wn.2d at 267. In addition to defamation claims, Division Three of this court has applied litigation privilege to bar claims of interference with a business relationship, outrage, infliction of emotional distress, and civil conspiracy filed against an attorney. *Jeckle v. Crotty*, 120 Wn. App. 374, 386, 85 P.3d 931 (2004).

For parties involved in a judicial proceeding, litigation privilege is predicated on the public policy interest in providing "the utmost freedom of access to the courts of justice for the settlement of their private disputes." *McNeal*, 95 Wn.2d at 267. In *McNeal*, where the supreme court extended litigation privilege traditionally afforded witnesses to include parties and attorneys, the court did not distinguish between the scope of the privilege available to a party as opposed to an attorney. 95 Wn.2d at 267.

Where a tort claim is predicated on testimony or statements made during a judicial proceeding, litigation privilege "has traditionally been limited to situations in which authorities have the power to discipline as well as strike from the record statements which exceed the bounds of permissible conduct." *Twelker v. Shannon & Wilson, Inc.*, 88 Wn.2d 473, 476, 564 P.2d 1131 (1977). Safeguards inherent to the judicial process, such as swearing an oath, cross-examination, and the threat of perjury, ensure the reliability of testimony. *Bruce*, 113 Wn.2d at 126. In addition, an attorney or party who submits an allegedly libelous statement is not entitled to do so with

impunity because the statement may be stricken and the court may "reprimand, fine and punish, as well as expunge from the records statements which exceed proper bounds." *McNeal*, 95 Wn.2d at 268.

Beyond statements and testimony, litigation privilege can preclude liability arising from conduct related to a lawsuit. *See Bruce*, 113 Wn.2d at 136-37; *Jeckle*, 120 Wn. App. at 386. In addition to the testimony itself, litigation privilege for witnesses applies to the "acts and communications which occur in connection with the preparation of that testimony." *Bruce*, 113 Wn.2d at 136. Division Three of this court has relied on the doctrine of litigation privilege to bar tort claims arising from an attorney's acts because the acts were pertinent to litigation. *Jeckle*, 120 Wn. App. at 386.

B. APPLICATION

*1. LITIGATION PRIVILEGE DOES NOT ALWAYS BAR AN ABUSE OF PROCESS CLAIM FILED AGAINST AN ATTORNEY*

Tatyana argues that litigation privilege does not always preclude liability for abuse of process claims for attorneys. Because abuse of process claims necessarily depend on allegations related to a lawsuit, Tatyana contends that an abuse of process claim could never succeed if litigation privilege applied. Moreover, Tatyana asserts that the public policy justifications that support application of litigation privilege for attorneys in other contexts do not apply to abuse of process claims.

Amici argue that an attorney may be liable for abuse of process where the attorney has intentionally engaged in an act removed from the legitimate purposes of the litigation because litigation privilege does not extend to such circumstances. Discussing Ninth Circuit cases pertaining to qualified immunity including *Lanuza v. Love*, 899 F.3d 1019 (9th Cir. 2018) and

*Reynaga Hernandez v. Skinner*, 969 F.3d 930 (9th Cir. 2020), amici provide several examples in which the court held that an attorney or judge who, in contravention of the law, deliberately harmed a person's immigration status in an act disconnected from the underlying litigation could be liable for that act in tort.[3]

Robertson responds that an attorney is entitled to litigation privilege, precluding liability for an abuse of process claim, unless the attorney "no longer acts as an attorney in any[ ]way." Resp't Robertson's Br. in Response to Amici at 3. To remove the shield of litigation privilege, Robertson contends that a plaintiff claiming abuse of process would have to demonstrate that the attorney intentionally and unlawfully threatened or coerced a litigant to attain an end unrelated to the lawsuit. Robertson further argues that in any event, an attorney cannot be liable for abuse of process if the legal action that forms the basis of a claim was judicially reviewed and approved.

We agree with amici's characterization of litigation privilege as it applies to an abuse of process claim filed against an attorney. We also agree with Tatyana's assertion that the traditional public policy considerations that justify application of litigation privilege to bar other tort claims filed against attorneys do not apply in the narrow context of abuse of process.

---

[3] Amici's brief addressed the legal issue set forth in the invitation letter without commenting on how that legal issue applies to the facts of this case, as is proper in light of amici's role. *See Teamsters Loc. 839 v. Benton County*, 15 Wn. App. 2d 335, 352, 475 P.3d 984 (2020). However, both Robertson's and Tatyana's responsive briefing in answer to amici contained extensive discussion of contested factual issues and other aspects of the case. Pursuant to RAP 10.1(e) a party is permitted to file a brief in answer to an amicus brief. But here, the parties have filed briefs that go well beyond the scope of any arguments contained in the brief submitted by amici. We decline to consider these additional arguments to the extent that they are duplicative attempts at arguing factual matters of the case that the parties had the opportunity to address in their initial briefing to this court.

Abuse of process is a type of tort that involves the misuse of a judicial proceeding to accomplish an end for which the process was not designed. *Maytown Sand & Gravel, LLC v. Thurston County*, 191 Wn.2d 392, 439, 423 P.3d 223 (2018), *abrogated on other grounds by Yim v. City of Seattle*, 194 Wn.2d 682, 702, 451 P.3d 694 (2019). "The crucial inquiry in abuse of process claims is therefore 'whether the judicial system's process, made available to insure the presence of the defendant or his property in court, has been misused to achieve another, inappropriate end.'" *Id.* (quoting *Gem Trading Co., Inc. v. Cudahy Corp.*, 92 Wn.2d 956, 963 n.2, 603 P.2d 828 (1979)).

Abuse of process claims necessarily include allegations that involve conduct related to a judicial proceeding. *See id.* But litigation privilege does not inexorably apply to all abuse of process claims; otherwise, no abuse of process claim could ever lie whether raised against an attorney or a party to a lawsuit.

Instead, the foundation of an abuse of process action is that the process must be used "'to accomplish some end which is without the regular purview of the process.'" *Batten v. Abrams*, 28 Wn. App. 737, 747, 626 P.2d 984 (1981) (quoting 1 Am. Jur. 2d *Abuse of Process* § 4, at 253 (1962)). "'The purpose for which the process is used, once it is issued, is the only thing of importance.'" *Id.* at 745-46 (quoting WILLIAM L. PROSSER, HANDBOOK OF THE LAW OF TORTS § 121 (4th ed. 1971)). Integral to an abuse of process claim, the complained of conduct, by its nature, must not be related to the legitimate purposes of a judicial proceeding. *See id.* at 747-48. Consequently, litigation privilege does not apply, and an attorney can be liable for abuse of process

where the attorney was alleged to have intentionally employed legal process for an inappropriate and extrinsic end.[4]

*Fite v. Lee*, 11 Wn. App. 21, 28, 521 P.2d 964 (1974), establishes that an attorney is not always entitled to litigation privilege as a defense to an abuse of process claim. In *Fite*, the plaintiff sued his former wife and her attorneys who had represented her in prior divorce proceedings for abuse of process. *Id.* at 22. He alleged that both his former wife and her attorneys served writs of garnishment to various financial institutions for ulterior purposes. *Id.* at 31. At trial, the former wife testified that she did not know of or consent to issuing the writs of garnishment. *Id.* at 24. The former wife moved for summary judgment, and the trial court dismissed her as a defendant. *Id.* The attorneys immediately moved for dismissal on the basis of res judicata, asserting that the attorney-client agency relationship meant that dismissal of their client nullified any claim of abuse of process as to them. *Id.* The trial court agreed with the attorneys and dismissed Fite's claims as to all defendants. *Id.*

On Fite's appeal, the issue before us was whether, if the client is found not at fault for an action giving rise to abuse of process, the claim is necessarily precluded against her attorneys. Relying, in part, on *Hoppe v. Klapperich*, 224 Minn. 224, 241, 28 N.W.2d 780 (1947), we explained that an attorney's private duty to provide zealous representation must yield to his or her

---

[4] We disagree with Robertson's formulation of litigation privilege as it applies to an abuse of process claim to the extent that she suggests an attorney is entitled to litigation privilege unless the attorney has used the process to threaten or coerce the plaintiff. In so arguing, Robertson places improper emphasis on extortion. Evidence of extortion is not always required to sustain an abuse of process claim. *Hough v. Stockbridge*, 152 Wn. App. 328, 344, 216 P.3d 1077 (2009). Moreover, Robertson's argument pertains to whether a plaintiff has presented the correct type of evidence to make out an abuse of process claim, which is distinct from the issue of whether an attorney is entitled to litigation privilege from conduct that might otherwise be actionable as abuse of process.

public duty "to further the administration of justice" as an officer of the court. *Id.* at 28. When an attorney engages in conduct that, by definition, constitutes abuse of process, the attorney violates his or her duty to act as a public officer of the court. *Id.* Therefore, if an attorney, "without the knowledge or consent of his client, abused process to the damage of another, the attorney acts outside the scope of his agency and the client should not be derivatively liable." *Id.* A claim against the attorney for abuse of process is thus not automatically precluded under the doctrine of res judicata where the client has been absolved of all wrongdoing. *Id.*

In *Fite*, we recognized that a claim may lie against an attorney whose conduct rises to the level of abuse of process where the client did not know of or approve of that process. *Id.* We did not address whether an attorney could be liable for abuse of process where the client was aware of and consented to the process because that issue was not before us.

In *Hoppe*, however, the Minnesota Supreme Court held that an attorney was not entitled to litigation privilege for abuse of process where an attorney and the attorney's client conspired to use legal process to extort assets from the plaintiff. 224 Minn. at 228-29. There, the attorney, his client, a municipal court judge, and a sheriff, acted in concert to knowingly issue a baseless warrant for Hoppe's arrest in order to compel Hoppe into surrendering an envelope containing bonds and other assets. *Id.* After separately discussing the applicable immunities from liability of the municipal court judge, the sheriff, and the attorney in turn, the Court held that "[a]n attorney is likewise personally liable to a third party if he maliciously participates with others in an abuse of process or if he maliciously encourages and induces another to act as his instrumentality in committing an act constituting an abuse of process." *Id.* at 243. The acts that form the basis of the

claim must be the attorney's "own personal acts, or the acts of others wholly instigated and carried on by [the attorney]." 224 Minn. at 243 (quoting 1 AM. JUR. *Abuse of Process* § 31 (1936)).

Denying litigation privilege in this narrow context is reinforced by the fact that the public policy justifications that support application of litigation privilege and, thus, immunity in other circumstances do not apply with equal force to abuse of process claims. But a grant of absolute immunity from liability requires a "compelling public policy justification." *Bender*, 99 Wn.2d at 600.

In other contexts, litigation privilege for attorneys is justified by the public interest in preserving in attorneys, as officers of the court, the freedom to pursue justice on behalf of their clients. *McNeal*, 95 Wn.2d at 267. But as recognized by this court in *Fite*, an attorney's duty to zealously represent his or her client "must yield" to the attorney's duties to the public "as an officer of the court to further the administration of justice" where such duties conflict. *Fite*, 11 Wn. App. at 28. If an attorney intentionally misappropriates a judicial proceeding to achieve an improper and extrinsic end, immunizing those who might otherwise be liable neither preserves "integrity of the judicial process," *Bruce*, 113 Wn.2d at 126, nor "further[s] the administration of justice." *Fite*, 11 Wn. App. at 28.

To the extent that Robertson relies on *Fite* to argue litigation privilege always precludes liability for abuse of process claims raised against an attorney if a court reviewed the process and determined it was proper, we disagree. Robertson relies on the portion of this court's holding in *Fite* wherein we held that although Fite's abuse of process claim as to the attorneys was not technically precluded, because the trial court approved the writs as issued in the dissolution proceedings, there was no abuse of process in that case. *Id.* at 31-32. We stated broadly that

"[w]here process is judicially reviewed and sanctioned, and where the court acts within its statutory authority in sanctioning the process, an action against the attorneys who instituted the process is wholly groundless." *Id.* at 32.

However, an action for abuse of process may lie "although the process is issued upon a valid judgment for a just cause[ ] and is valid in form." *Rock v. Abrashin*, 154 Wash. 51, 53, 280 P. 740 (1929); *see also Batten*, 28 Wn. App. at 747 (recognizing a pattern in multiple cases from various jurisdictions that "regularity or irregularity of the initial process is irrelevant"). We see no

public policy justification that supports precluding liability in such circumstances for an attorney but not for the attorney's client and decline to treat these actors differently.[5]

    2. *LITIGATION PRIVILEGE DOES NOT BAR TATYANA'S ABUSE OF PROCESS CLAIM AGAINST ROBERTSON*

Tatyana argues that the trial court erred when it dismissed her abuse of process claim against Robertson based on litigation privilege. Robertson responds that she was entitled to litigation privilege because Tatyana did not allege or present any evidence that Robertson used the family law proceedings to intentionally threaten or coerce Tatyana.

---

[5] In reviewing and approving process, it is possible that a court might not be made aware of certain facts that would indicate the process has been instituted to achieve an inappropriate and extrinsic end. For example, in a context where an opposing party is an undocumented immigrant, there could be an occasion in which an attorney has filed a motion to modify a parenting plan—a motion that is not baseless on its face—for the sole purpose of ensuring that the undocumented opposing party is present in court and available for apprehension by a federal agency.

    Indeed, warrantless civil immigration arrests of individuals in courthouses, or of individuals arriving to or leaving from courthouses, have occurred with sufficient frequency in Washington that the Legislature passed a bill on February 7, 2020 prohibiting such arrests. LAWS OF 2020, ch. 37. In addition, General Rule 38, which became effective on April 21, 2020, now prohibits "civil arrest without a judicial arrest warrant or judicial order for arrest" of individuals who are in Washington courts, or who are traveling to or from Washington courts. As of 2016, more than 50 warrantless civil immigration arrests in Washington courthouses have been reported in 16 different counties, though it is likely that many more warrantless arrests have taken place that have not been reported. *Justice Compromised: Immigration Arrests at Washington State Courthouses*, U. WASH. CTR. FOR HUM. RTS. (Oct. 16, 2019), https://jsis.washington.edu/humanrights/2019/10/16/ice-cbp-courthouse-arrest [https://perma.cc/U2Z3-2M99].

    If, in filing a motion, the attorney's intent was to facilitate detention of the undocumented former spouse by the United States Immigration and Customs Enforcement so that his or her client would have full custody by default, such use of process, with sufficient proof, could meet the elements of abuse of process. *See Maytown*, 191 Wn.2d at 439. In this hypothetical situation, the trial court may have reviewed and approved the attorney's motion to modify without any reason to suspect that such process was not issued in earnest but to instead ensure the former spouse's arrest and deportation. This conduct is violative of the attorney's public duty to further the administration of justice as an officer of the court. *See Fite*, 11 Wn. App. at 28. If an attorney's conduct rises to the level of abuse of process, the fact that the trial court approved of that process does not alter the analysis or preclude liability for an otherwise actionable claim.

We agree with Tatyana that the trial court misapprehended the law when it ruled that Tatyana's abuse of process claim against Robertson was precluded by Robertson's litigation privilege. Therefore, dismissing Tatyana's abuse of process claim was error.

In ruling that *Fite* does not stand for the proposition that Robertson is "absolutely immune" from tort liability, the trial court explained,

> [*Fite*] is a case with a very distinct and unusual fact pattern that can be argued and is argued as an exception to the doctrine of immunity. That case is very fact specific. As the allegations apply in the instant case against Ms. Robertson, she is absolutely immune from tort liability as alleged by Ms. Mason.

VRP (Sept. 1, 2017) at 14-15.

As described above, *Fite* provides for a narrow exception to litigation privilege for abuse of process claims alleged against an attorney. 11 Wn. App. at 27-28. In *Fite*, we did not constrict our holding to the particular circumstances of that case. *Id.* Instead, we articulated rules of broader applicability by discussing the public policy implications of an attorney's duty as an officer of the court. *Id.* at 28. Although *Fite* was factually distinct from the instant case, these distinctions did not render Robertson immune from Tatyana's abuse of process claim.

Contrary to the trial court's statement in its oral ruling, litigation privilege does not apply here because Tatyana alleged that John and Robertson engaged in the complained of conduct to accomplish an end unrelated to the underlying judicial proceeding. *See Bruce,* 113 Wn.2d at 136-37; *Jeckle*, 120 Wn. App. at 386. Tatyana argued that Robertson and John conspired to pursue the parenting plan modification proceedings to further control and abuse her and, when coupled with John's alleged intentional damage to her immigration status, to place her in an inescapable quagmire with little hope for gaining stability. A parenting plan is created to divide parental roles and responsibilities. *King v. King*, 162 Wn.2d 378, 386, 174 P.3d 659 (2007). Once those roles

35

and responsibilities are established, a court may not modify a parenting plan absent a finding that modification is in the best interests of the child. *In re Custody of Halls*, 126 Wn. App. 599, 607, 109 P.3d 15 (2005). Therefore, if Tatyana's allegation as to Robertson's purpose in engaging in the family law proceedings is proven, that purpose would be unrelated to the legitimate goals of the legal proceedings, and Robertson is not entitled to litigation privilege.

### 3. LITIGATION PRIVILEGE DOES NOT BAR TATYANA'S INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIMS AGAINST JOHN OR ROBERTSON

Tatyana argues that litigation privilege does not apply to her intentional infliction of emotional distress claim against John. Tatyana also contends that we should decline to consider John's argument regarding litigation privilege because the trial court did not rule on John's immunity.

Robertson defends the trial court's decision to apply absolute immunity in dismissing Tatyana's intentional infliction of emotional distress claim because Robertson was not a party to the underlying family law proceedings. Robertson asserts further that even if she had engaged in any inappropriate conduct, redress for such conduct is limited to sanctions or disciplinary action by the Bar Association.

John argues that he is entitled to litigation privilege for Tatyana's intentional infliction of emotional distress claim. John contends that even if he provided false or misleading testimony in the family law proceedings, he cannot be held liable in tort and may only be subject to sanctions or a prosecution for perjury.

We disagree with Tatyana's assertion that we cannot consider whether litigation privilege precludes John's liability from her intentional infliction of emotional distress cause of action because, although the trial court did not address the issue in its order granting John's motion, John

raised the issue before the trial court. This issue is thus properly before us because we can affirm the trial court on any basis supported by the record. *In re Marriage of Rideout*, 150 Wn.2d 337, 358, 77 P.3d 1174 (2003).

However, we also disagree with John and Robertson. Because Tatyana's intentional infliction of emotional distress claim is based, in part, on her allegation that John and Robertson acted with intent to control and abuse her, such conduct, if proven, is unrelated to the underlying family law proceedings and would not be covered by litigation privilege.

In *Jeckle*, we applied absolute immunity to bar a doctor's claim of outrage and intentional infliction of emotional distress against an attorney who had filed a class action lawsuit against him. 120 Wn. App. at 386. The doctor, who had been under investigation by the Medical Quality Assurance Commission for prescribing a harmful weight-loss supplement, claimed that the attorney improperly used the investigation file to solicit clients and to ask him questions during a deposition. *Id.* at 377-78.

In holding that the attorney was entitled to litigation privilege, the *Jeckle* court relied on a defamation case from Minnesota wherein that court dismissed a claim filed against an attorney who had solicited clients in good faith in anticipation of litigation. *Id.* at 386 (citing *Kittler v. Eckberg, Lammers, Briggs, Wolff & Vierling*, 535 N.W.2d 653, 657–58 (Minn.Ct.App.1995)). The court explained that because soliciting clients and asking questions in a deposition was conduct pertinent to a lawsuit, the defendant attorney was absolutely immune from liability. *Id.*

Conduct that is extreme and outrageous may be privileged, and "[t]he actor is never liable, for example, where he has done no more than to insist upon his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress."

37

Restatement (Second) of Torts § 46 cmt. g (1965). But the supreme court has recognized that although such privilege will often preclude a claim for intentional infliction of emotional distress, it does not "per se immunize one's conduct." *Reyes v. Yakima Health Dist.*, 191 Wn.2d 79, 91, 419 P.3d 819 (2018). The Court acknowledged that a claim for intentional infliction of emotional distress would not be precluded where "the manner of invoking a legal power intentionally inflicts emotional distress." *Id.* at 92.

Here, Tatyana's intentional infliction of emotional distress claim stems from allegations that Robertson and John conspired to place Tatyana in intractable circumstances both with regard to her immigration status and finances, causing severe emotional distress. With respect to John, Tatyana also claimed that John took advantage of her limited English proficiency and lack of legal knowledge in order to advance an action that would result in such damage.

Although the tortious conduct involves filing and pursuing a legal action, unlike in *Jeckle*, the complained of actions were alleged to have been undertaken to accomplish an end unrelated to the lawsuit. *See* 120 Wn. App. at 386. As we discuss in section V(B) *supra* regarding a claim for abuse of process, litigation privilege does not apply where the actions were undertaken for some purpose unrelated to a lawsuit.

Moreover, Tatyana claims that John and Robertson did not merely act in genuine pursuit of John's legal rights during the modification and vacation proceedings; instead, Tatyana alleges that the legal proceedings were an instrumentality employed to abuse and control her. Therefore, as alleged, litigation privilege does not preclude Tatyana's intentional infliction of emotional distress claim against John or Robertson. *See Deatherage*, 134 Wn.2d at 135; *Jeckle*, 120 Wn. App. at 386.

*4. REMEDY*

In dismissing each of Tatyana's claims as alleged against Robertson, the trial court ruled that Robertson was absolutely immune from liability. But as explained above, litigation privilege does not, in this case, present "'some insuperable bar to relief'" justifying dismissal as a matter of law. *J.S.*, 184 Wn.2d at 100 (internal quotation marks omitted) (quoting *Cutler*, 124 Wn.2d at 755). The trial court therefore erred when it applied litigation privilege and dismissed Tatyana's claims against Robertson on that basis. *See id.* Because the trial court's order dismissing Tatyana's claims against Robertson was incorrect due to an error of law, Tatyana is entitled to a remand to proceed absent that legal error.

With respect to John's claims, although John raised immunity in his motion to dismiss, the trial court did not similarly state, in its order granting John's motion, that its ruling was based on John's immunity from liability. We therefore move forward to consider whether the trial court properly granted John's motion to dismiss on other grounds.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Unpublished text follows.

VI. SUMMARY JUDGMENT DISMISSAL OF TATYANA'S CLAIMS AGAINST JOHN

Turning to whether the trial court properly granted John's summary judgment motion, the only tort claims Tatyana addresses in appeal to this court are her abuse of process and intentional infliction of emotional distress claims. Because genuine issues of material fact exist as to both

claims, the trial court erred when it dismissed these claims. *See Indoor Billboard*, 162 Wn.2d at 70.

A. ABUSE OF PROCESS

Tatyana argues that the trial court erred in dismissing her abuse of process claim against John because John initiated the parenting plan modification proceedings and engaged in improperly aggressive advocacy throughout the proceedings to further abuse and control her and to damage her immigration status. John responds that Tatyana's claim fails as a matter of law because her complaint did not allege that legal process was used to accomplish any act extrinsic to that process. John further asserts that Tatyana failed to present sufficient evidence to raise a genuine issue of material fact with respect to her abuse of process claim.

In construing the evidence in the light most favorable to Tatyana, a genuine issue of material fact exists as to whether John employed legal process to damage Tatyana's immigration status and to trap Tatyana in a meager subsistence. Accordingly, the trial court erred in dismissing Tatyana's abuse of process claim against John on summary judgment.

*1. LEGAL PRINCIPLES*

An abuse of process claim involves two elements: "'(1) the existence of an ulterior purpose—to accomplish an object not within the proper scope of the process—and (2) an act in the use of legal process not proper in the regular prosecution of the proceedings.'" *Hough*, 152 Wn. App. at 343-44 (quoting *Fite*, 11 Wn. App. at 27). "Process," as used in this context, refers to "'all the acts of a court from the beginning to the end of its proceedings in a given cause.'" *Id.* at 346 (internal quotation marks omitted) (quoting *State v. Duffey*, 97 Wn. App. 33, 40-41, 981 P.2d 1 (1999)).

A claim for abuse of process requires a showing that legal process was appropriated for an extrinsic end beyond the natural scope of the suit, "'and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion.'" *Batten*, 28 Wn. App. at 746 (quoting WILLIAM L. PROSSER, HANDBOOK OF THE LAW OF TORTS § 121 at 856 (4th ed. 1971)). Accordingly, initiation of a legal proceeding that is baseless and vexatious does not alone amount to abuse of process. *Saldivar v. Momah*, 145 Wn. App. 365, 389, 186 P.3d 1117 (2008). Instead, "'[t]he gist of the tort is not commencing an action or causing process to issue without justification, but misusing, or misapplying process justified in itself for an end other than that which it was designed to accomplish.'" *Batten*, 28 Wn. App. at 745-46 (quoting WILLIAM L. PROSSER, *supra*, § 121 at 856 (4th ed. 1971)).

## 2. APPLICATION

Tatyana's complaint contained allegations that addressed the gravamen of an abuse of process claim wherein she asserted that John weaponized the family law proceedings as a means of continuing to abuse and control her. Tatyana claimed that as a result of the court's orders at the conclusion of the 2011 modification proceedings and John's actions, her immigration status was damaged. Because of the damage to her immigration status, Tatyana cannot obtain legal work authorization, nor does she have any other source of income available to her. And the Division of Child Support has retained possession of Tatyana's passport due to the past due child support, preventing Tatyana from returning to her home county. Since the modification proceedings, Tatyana has experienced homelessness, her car has been repossessed, and she has been entirely dependent on friends to assist her with the basic necessities of survival.

To the extent John may have mobilized the family law proceedings to damage Tatyana's immigration status and to deprive her of security and stability, such purpose is not within the proper scope of a parenting proceeding. Residential schedules and parenting plans are both created and modified to promote the best interests of the child. *C.M.F.*, 179 Wn.2d 411 at 419. Courts do not resolve issues of parenting and residential time with an aim to reward one parent or to punish the other. *See C.M.F.*, 179 Wn.2d at 419 (noting that ch, 26.09 RCW, the Parenting Act of 1987, was designed to revise "the concepts of 'visitation' and 'custody' as they tended to 'treat children as a prize awarded to one parent and denied the other'") (quoting *State* v. *Veliz*, 176 Wn.2d 849, 855, 298 P.3d 75 (2013)).

As we stated in *Batten*, abuse of process can be summarized by framing the essential elements of the tort as "a matter of bringing action A to accomplish purpose B." 28 Wn. App. at 745. Having identified that John's alleged ulterior purpose, or "purpose B," was extrinsic and improper to the family law proceedings, we turn to whether the evidence, when considered in the light most favorable to Tatyana, was sufficient to raise a genuine issue of fact that "action A" was brought to effectuate that improper purpose. *See id.*

Considering evidence that John had a documented abusive history, that such abuse has manifested in damage to Tatyana's immigration status, and that John has wrongfully denied that he was under an affirmative obligation to provide Tatyana financial support as her immigration sponsor, there was a genuine issue of material fact as to whether John pursued the parenting plan modification to ensure that Tatyana experience a seemingly perpetual purgatory. The record reflects that Tatyana was a victim of domestic violence while married to John based on a trial court finding from the 2013 order modifying the parenting plan and custody decree which stated,

"Petitioner did have a civil finding of domestic violence against him in 2007." CP at 346. Tatyana also submitted the protection order entered against John prior to their dissolution proceedings as evidence of his abusive history.

Evidence set forth before the trial court explicitly connected the domestic violence Tatyana experienced while married to John to John's actions in damaging Tatyana's immigration status. Tatyana was a conditional permanent resident pursuant to 8 U.S.C. § 1186a as the spouse of an American citizen. To remove the conditions on her permanent residency, John and Tatyana were required to jointly file a petition and appear for an interview attesting to the validity of their marriage within two years of Tatyana's designation as a conditional permanent resident. 8 U.S.C. § 1186a(c)(1). Failure to timely petition for removal of the conditions and to appear for an interview terminates an individual's conditional permanent resident status. 8 U.S.C. § 1186a(c)(2).

In the 2016 order vacating Tatyana's child support obligation, the trial court found that "[Tatyana] was the victim of domestic violence from [John] and [John] lost his incentive to support permanent residency for [Tatyana]." CP at 87. Tatyana could not have removed the conditions on her permanent residency without John's participation in that process. *See* 8 U.S.C. § 1186a(c)(1). Moreover, in the USCIS letter denying Tatyana's application for naturalization, USCIS acknowledged Tatyana's statement that her "controlling ex-husband was preventing [her] from applying [for naturalization] at an earlier date," and noted immediately thereafter that "[i]ndeed, our record reflects that your spouse did not file the necessary documents on your behalf at the earlier date." CP at 774.

In addition, evidence that John incorrectly denied that he entered into a binding contract with the United States government by signing an I-864 affidavit, in which he agreed to provide

43

financial support for Tatyana as her immigration sponsor, raises a factual dispute as to whether John intended that Tatyana experience financial distress. An I-864 affidavit "creates a binding contract between the sponsor and the federal government, with the intended immigrant as the third-party beneficiary." *In re Marriage of Khan*, 182 Wn. App. 795, 799, 332 P.3d 1016 (2014). A sponsor who completes the form agrees "to 'provide support to maintain the sponsored [immigrant] at an annual income that is not less than 125 percent of the [f]ederal poverty line during the period in which the affidavit is enforceable.'" *Id.* (quoting 8 U.S.C. § 1183a(a)(1)(A)). A sponsor's obligations under the I-864 contract continue indefinitely until one of five termination events occur. *Id.* (citing 8 U.S.C. § 1183a(a)(2)-(3); 8 C.F.R. § 213a.2(e)(2)). Dissolution of a marriage between the sponsor and the immigrant spouse does not terminate the sponsor's obligations. *Id.* (citing *Liu v. Mund*, 686 F.3d 418, 423 (7th Cir. 2012)).

During the 2016 vacation proceedings, in its oral ruling discussing its reasons for imposing CR 11 sanctions on John, the trial court read four statements from John's declaration in which John denied that he completed an I-864 affidavit or that he would have been required to complete an I-864 affidavit. John's denial that he completed this form raised the issue of the form's existence, which was resolved following a three-day hearing that the trial court believed was "unnecessary." CP at 403. The trial court also described John's allegations that he never completed the form as "baseless." *Id.*

In fact, John had completed the form when he sponsored Tatyana's immigration, which he signed in the presence of a notary. The trial court found that none of the events that terminate a sponsor's obligation under the I-864 affidavit had occurred. Therefore, despite entering into a binding agreement with the United States government to ensure that Tatyana would not become a

public charge, John incorrectly denied that he was ever so obligated and has not provided Tatyana the support he promised.[6] Such fervent, and apparently "baseless" denial, when construed in the light most favorable to Tatyana, raises an inference that John actively intended to avoid his support obligation and to keep Tatyana in financial dire straits. *See id.*

Evidence presented before the trial court raises a genuine issue of material fact as to whether the modification proceedings in 2011 were the cause of Tatyana's present predicament. The USCIS letter denying Tatyana's request for naturalization explains that Tatyana was ineligible because she could not demonstrate that she was a person of good moral character due to her child support debt and the protection order entered against her. The letter acknowledged Tatyana's "difficulties living with an abusive spouse," but it concluded that such circumstances were "not extenuating" and did not absolve her of the consequences of her child support debt and protection order. CP at 774. The 2016 trial court also found that Tatyana would likely be unable to remove the conditions to her permanent residency as a result of her past due child support.

The damage to Tatyana's immigration status coupled with Tatyana's child support obligation have resulted in an impasse. With child support arrears and a protection order entered against her, Tatyana would be unable to establish that she is a person of "good moral character" so as to remedy her the damage to her immigration status and regain financial stability through employment. *Id.* Taken in the light most favorable to Tatyana, evidence of John's prior abuse, the connection between John's abuse and the damage inflicted to Tatyana's immigration status, and

---

[6] Tatyana filed a lawsuit in federal court seeking enforcement of John's support obligation under the I-864 affidavit, but the suit was dismissed with prejudice because Tatyana raised issues related to the I-864 affidavit in several appeals before this court, and she failed to explain the basis of the federal court's jurisdiction after several attempts at amending her complaint. *Mason v. Mason*, No. C17-5289, 2017 WL 3721763 (W.D. Wash. Aug. 29, 2017) (court order).

John's vehement denial of any responsibility for Tatyana's financial wellbeing despite his affirmative agreement to provide support under the I-864 affidavit raises a genuine issue of material fact as to whether John intended the modification proceedings to ensure such a result.

B. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Tatyana argues that John's conduct in pursuing the underlying family law proceedings amounts to intentional infliction of emotional distress in that he misappropriated the family law proceedings to cause her to suffer grievous harm. John contends that Tatyana's claim for intentional infliction of emotional distress fails as a matter of law because the stress of divorce litigation does not amount to an actionable claim, and merely pursuing litigation is not extreme and outrageous conduct.

Contrary to John's assertion, Tatyana did not merely allege that she suffered from litigation-related stress arising from the family law litigation, but rather that the family law litigation was the mechanism by which John continued to abuse and control her. Because reasonable minds could conclude that such conduct was extreme and outrageous, the trial court erred in dismissing Tatyana's intentional infliction of emotional distress claim as a matter of law.

*1. LEGAL PRINCIPLES*

To prevail on a claim of intentional infliction of emotional distress, the plaintiff must establish three elements: (1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual suffering from severe emotional distress. *Kloepfel v. Bokor*, 149 Wn.2d 192, 195, 66 P.3d 630 (2003). Although the elements of outrage "are generally factual questions for the jury, a trial court faced with a summary judgment motion must first determine whether reasonable minds could differ on whether the conduct was sufficiently extreme to result

in liability." *Strong v. Terrell*, 147 Wn. App. 376, 385, 195 P.3d 977 (2008). If reasonable minds could differ as to this threshold question of law, the claim proceeds to the finder of fact.

Extreme and outrageous conduct sufficient to satisfy the first element must be "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Kloepfel*, 149 Wn.2d at 196 (emphasis omitted) (internal quotation marks omitted) (quoting *Grimsby v. Samson*, 85 Wn.2d 52, 59, 530 P.2d 291 (1975)). "'[M]ere insults, indignities, threats, annoyances, petty oppressions, or other trivialities,'" will not amount to extreme and outrageous conduct, and "'[i]n this area plaintiffs must necessarily be hardened to a certain degree of rough language, unkindness and lack of consideration.'" *Id.* at 196 (internal quotation marks omitted) (quoting *Grimsby*, 85 Wn.2d at 59).

### 2. APPLICATION

Here, as we discuss above, Tatyana raised a genuine issue of material fact as to whether John initiated the family law modification proceedings to not only damage Tatyana's immigration status, but to ensure that she indefinitely suffer an exiguous existence. The fact that Tatyana's circumstances could continue in perpetuity renders the complained of conduct beyond the scope of a mere unkindness or a lack of consideration. *See e.g., Spicer v. Patnode*, 9 Wn. App. 2d 283, 297, 443 P.3d 801(2019) (holding that if the defendant had only occasionally started his truck to scare the plaintiff's students, such conduct would not be actionable, but because the complained of conduct occurred regularly over several months, reasonable minds could conclude that the conduct was extreme and outrageous).

While conduct that amounts to outrage "is nebulous and difficult to define," we believe that reasonable minds could conclude that the conduct complained of here is "so outrageous in character, and so extreme in degree, as to be utterly intolerable in a civilized community." *Id.* at 296. Consequently, the trial court erred in dismissing Tatyana's claim for intentional infliction of emotional distress as a matter of law. *See id.* at 297.

## VII. IMPOSITION OF SANCTIONS

Tatyana argues that the trial court abused its discretion in awarding sanctions pursuant to CR 11 and RCW 4.84.185 because her claim was well-grounded in fact and supported by existing law. Robertson argues that the trial court properly awarded fees under RCW 4.84.185 because Tatyana's claims were meritless "to a point of frivolity" and barred by the statute of limitations, the doctrines of immunity and res judicata, and collateral estoppel. Br. of Resp't Robertson at 25. Robertson further defends the trial court's award of CR 11 sanctions by arguing that Tatyana's claims were baseless, and as Robertson argued before the trial court, Tatyana did not bring "'a creative theory to an unsettled area of law; rather, she, herself, ironically engag[ed] in an abuse of process.'" *Id*. at 26 (quoting the record). John, who was only awarded sanctions pursuant to CR 11, argues that the trial court properly imposed sanction because Tatyana's claims are "patently without merit." Br. of Resp't John at 19.

Because the trial court erred in dismissing Tatyana's claims against Robertson on the basis of Robertson's litigation privilege, and because the trial court erred in dismissing Tatyana's abuse of process and intentional infliction of emotional distress claims against John on summary judgment, the trial court also abused its discretion in awarding sanctions to Robertson and John.

48

A. SANCTIONS UNDER RCW 4.84.185

Under RCW 4.84.185, a trial court is authorized to award the prevailing party its reasonable expenses, including attorney fees, incurred in opposing a frivolous action. *Bldg. Indus. Ass'n of Wash. v. McCarthy*, 152 Wn. App. 720, 745, 218 P.3d 196 (2009). An award under this statute is available only when the action is frivolous in its entirety. *State ex rel. Quick–Ruben v. Verharen*, 136 Wn.2d 888, 903, 969 P.2d 64 (1998). A frivolous action is one that "cannot be supported by any rational argument based in fact and law." *Curhan v. Chelan County*, 156 Wn. App. 30, 37, 230 P.3d 1083 (2010). We review an award under RCW 4.84.185 for abuse of discretion. *Id.*

Here, the trial court abused its discretion in awarding costs and fees to Robertson under RCW 4.84.185. In determining whether a claim is frivolous, we "must judge the reasonableness of a pleading not with the benefits of self-fulfilling hindsight but by examining what was known at the time the pleading was submitted." *Quick-Ruben*, 136 Wn.2d at 909. The trial court misapprehended the holding in *Fite* when it dismissed Tatyana's claim against Robertson based on Robertson's litigation privilege. Contrary to the trial court's determination, Tatyana's abuse of process claim against Robertson could be supported by rational argument and fact.

At the time Tatyana raised her claim, John had been sanctioned for improperly denying that he completed an I-864 affidavit and causing Tatyana to undergo three days of litigation only to confirm that the form indeed existed. The trial court described Robertson's conduct as exceeding the scope of zealous representation. It is worth noting that on review, we reversed the sanctions because the trial court's written findings were insufficient and did not incorporate its oral ruling, not because the reasons the trial court supplied in its oral ruling did not warrant sanctions. *Mason*,

No. 49839-1-II, slip op. at 4-6. And under *Hough*, a process that is designed to "harass another party, cause unnecessary delay, or needlessly increase another party's litigation costs," will support a claim of abuse of process. 152 Wn. App. at 346. Consequently, Tatyana's abuse of process claim against Robertson could have been supported by law and fact, and the trial court abused its discretion in awarding sanctions under RCW 4.84.185.

B. SANCTIONS UNDER CR 11

A court may impose CR 11 sanctions against a pro se litigant "for filing a claim for an improper purpose, or if the claim is not grounded in fact or law and the signing litigant failed to conduct a reasonable inquiry." *In re Recall of Lindquist*, 172 Wn.2d 120, 136, 258 P.3d 9 (2011). "'Because CR 11 sanctions have a potential chilling effect, the trial court should impose sanctions only when it is patently clear that a claim has absolutely no chance of success. The fact that a complaint does not prevail on its merits is not enough.'" *Dutch Vill. Mall v. Pelletti*, 162 Wn. App. 531, 539, 256 P.3d 1251 (2011) (quoting *Loc Thien Truong v. Allstate Prop. & Cas. Ins. Co.*, 151 Wn. App. 195, 208, 211 P.3d 430 (2009)). An improper purpose is one designed to "to harass or to cause unnecessary delay or needless increase in the cost of litigation." CR 11(a)(3). We review the imposition of sanctions under CR 11 for an abuse of discretion. *Lindquist*, 172 Wn.2d at 135-36.

First, the trial court abused its discretion when it dismissed Tatyana's claims against Robertson on the basis of absolute immunity and the statute of limitations. As explained above, Tatyana's claims are not barred under the applicable statute of limitations, and an attorney may be liable for abuse of process.

Second, it was not "'patently clear'" that Tatyana's claims had no chance of success. *Dutch Village Mall*, 162 Wn. App. at 539 (quoting *Loc Thien Truong*, 151 Wn. App. at 208). As we explained above, the trial court erred in dismissing Tatyana's abuse of process and intentional infliction of emotional distress claims against John on summary judgment.

With respect to Tatyana's abuse of process claim against Robertson, as described in the section pertaining to RCW 4.84.185, Tatyana's claim reflected a reasonable inquiry into the law and fact. In her complaint, Tatyana expressly connected the damage to her immigration status with John and Robertson's use of legal process during the 2011 parenting plan modification proceedings. Tatyana's complaint reflects an understanding of the necessary elements in an abuse of process claim.

## VIII. TATYANA'S MOTION FOR SANCTIONS ON APPEAL

While this appeal was pending, Tatyana moved this court for entry of sanctions against John and his appellate counsel, arguing she is entitled to sanctions because John's appellate counsel has a conflict of interest and because the statement of the case section of John's response brief was argumentative and misrepresented the record. We deny her motion.

Tatyana's conflict of interest claim is based on her apparent confusion that John's counsel on appeal was the same individual who had represented her in prior family law proceedings. In fact, the attorneys are two different individuals who happen to share the same last name. Thus, sanctions are not warranted on this basis.[7]

---

[7] John argues that Tatyana's request for sanctions on this basis is sanctionable conduct in its own right because her mistake regarding the identities of the attorneys could not have been made in earnest. We decline John's invitation to speculate regarding Tatyana's motivation in filing her request for sanctions, which could have just as easily been the result of excusable confusion. We therefore deny John's separate request for sanctions.

While we have discretion to sanction a party under RAP 18.9(a) for failing to follow rules of appellate procedure, including the failure to adhere to content of brief requirements in RAP 10.3, Tatyana has not identified any violations. Tatyana claims that John falsely stated that she earned $2,080 per month working in the United States and that she has a long history of abuse. However, neither statement appears in John's statement of facts in his response brief. We thus deny Tatyana's motion for sanctions on this basis as well.

## ATTORNEY FEES ON APPEAL

John requests an award of attorney fees on appeal under RAP 18.9(a) and CR 11 for having to defend against Tatyana's allegedly frivolous appeal. An appeal is frivolous if there are no debatable issues on which reasonable minds can differ and is so totally devoid of merit that there was no reasonable possibility of reversal. *In re Recall Charges Against Feetham*, 149 Wn.2d 860, 872, 72 P.3d 741 (2003). Here, Tatyana prevails on several issues on appeal, and we have not determined a prevailing party as to Tatyana's claims of abuse of process and intentional infliction of emotional distress. Accordingly, we deny John's fee request.

Robertson also requests an award of attorney fees on appeal pursuant to RAP 18.1, RAP 18.9, RCW 4.84.185, and CR 11. She argues that she is entitled to fees because Tatyana's claims were devoid of any chance of success. However, Tatyana's claims were not totally devoid of merit and presented debatable issues, some of which Tatyana successfully appealed. We also deny Robertson's request for fees on appeal.

## CONCLUSION

We hold that the trial court abused its discretion when it failed to inquire into Tatyana's need for an interpreter despite clear notice of Tatyana's language difficulties, the statute of

limitations does not bar Tatyana's claims, res judicata and collateral estoppel do not apply, and litigation privilege does not preclude Tatyana's abuse of process or emotional distress claims against either John or Robertson. Because the trial court dismissed Tatyana's claims against Robertson based on Robertson's immunity, we hold that the trial court erred as a matter of law in dismissing these claims. Further, because Tatyana raised a genuine issue of material fact as to her abuse of process claim against John, and because reasonable minds could conclude that John's alleged conduct was extreme and outrageous, we hold that the trial court erred in granting John's motion to dismiss. In addition, we hold that the trial court abused its discretion when it awarded sanctions pursuant to CR 11 to John and Robertson and pursuant to RCW 4.84.185 to Robertson. We also deny John's and Robertson's requests for attorney fees on appeal, and we deny Tatyana's motion for sanctions on appeal.

Accordingly, we reverse the trial court's order granting Robertson's motion to dismiss and the trial court's order granting John's motion to dismiss. We remand this case for further proceedings consistent with this opinion.

CRUSER, J.

We concur:

LEE, C.J.

GLASGOW, J.